1 | Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
2 | Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
3 | Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
4 | KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
5 | Beverly Hills, California 90211
Telephone: 310/854.4444
6 | Facsimile: 310/854.0812

7 | Jeffrey K. Berns, Esq. (SBN 131351)
jberns@law111.com
8 | ARBOGAST & BERNS, LLP
19510 Ventura Boulevard, Suite 200
9 | Tarzana, California 91356
Telephone: 818/961.2000
10 | Facsimile: 818/867.4820

11 | Attorneys for Plaintiffs,
on behalf of themselves and all others similarly situated
12

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA

15

16 | CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA, on behalf of themselves and others similarly situated,

**CASE NO: SACV07-613 AG (JTLx)**

17 | | SECOND AMENDED CLASS ACTION COMPLAINT FOR:

18 | Plaintiffs, | (1)  Violations of the Truth in Lending Act, 15 U.S.C. §1601, *et seq*;

19 | v.

20 | | (2)  Violation of Bus. & Prof. Code §17200, *et seq.* - "Unlawful" Business Practices (TILA);

21 | HOME LOAN CENTER, INC., dba LENDINGTREE LOANS; and DOES 1 through 200, inclusive,

22 | | (3)  Fraudulent Omissions;

Defendants.

23 | | (4)  Violation of Bus. & Prof. Code §17200, *et seq.* – "Unfair" and "Fraudulent" Business Practices;

24 | | (5)  Breach of Contract; and

25 | | (6)  Tortuous Breach of the Covenant of Good Faith and Fair Dealing.

26

27 | | **JURY TRIAL DEMANDED**

28

-1-

Plaintiffs, CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA ("Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows:

## I.

## INTRODUCTION

1.    This is an action brought pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.,* and other statutory and common law in effect.  Plaintiffs CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA, individually, and on behalf of all others similarly situated, bring this action against HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, and DOES 1-200 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiffs and the Class Members, in Defendants' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans (I) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiffs and Class members would be paying on the Note(s).

## II.

## THE PARTIES

2.    Plaintiffs, CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA, are and at all times relevant to this Complaint were, individuals residing in Whittier, California.  On or about February 1, 2006, Plaintiffs refinanced their existing home loan and entered into an Option ARM loan agreement with Defendant.  The Option ARM loan was secured by Plaintiffs' primary residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Statement

1   ("TILDS") pertinent to this action.

2       3.      Defendant HOME LOAN CENTER, INC., dba LENDINGTREE

3   LOANS is, and at all material times relevant to this Complaint was, qualified to do

4   business in California.  Defendant is a corporation or other business entities, form

5   unknown, doing business in this judicial district.  At all relevant times hereto HOME

6   LOAN CENTER, INC., dba LENDINGTREE LOANS was and is engaged in the

7   business of promoting, marketing, distributing and selling the Option Arm loans that

8   are the subject of this Complaint.  HOME LOAN CENTER, INC., dba

9   LENDINGTREE LOANS transacts business in Los Angeles County, California and

10  at all relevant times promoted, marketed, distributed, and sold Option Arm loans

11  throughout the United States, including Los Angeles County, California.  HOME

12  LOAN CENTER, INC., dba LENDINGTREE LOANS has significant contacts with

13  Los Angeles County, California, and the activities complained of herein occurred, in

14  whole or in part, in Los Angeles, California.

15      4.      Defendant HOME LOAN CENTER, INC., dba LENDINGTREE

16  LOANS and DOES 1 through 200 shall hereinafter be referred to collectively as

17  "Defendants."

18      5.      At all times mentioned herein, Defendants, and each of them, were

19  engaged in the business of promoting, marketing, distributing, purchasing, and/or

20  selling the Option ARM loans that are the subject of this Complaint, throughout the

21  United States, including Los Angeles County, California.

22      6.      Plaintiffs are informed, believe, and thereon allege, that each and all of

23  the aforementioned Defendants are responsible in some manner, either by act or

24  omission, strict liability, fraud, deceit, fraudulent concealment, negligence,

25  respondeat superior, breach of contract or otherwise, for the occurrences herein

26  alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the

27  conduct of Defendants.

28      7.      Plaintiffs are informed, believe, and thereon allege, that at all times

SECOND AMENDED CLASS ACTION COMPLAINT

1  material hereto and mentioned herein, each of the Defendants (both named and DOE
2  defendants) sued herein were the agent, servant, employer, joint venturer, partner,
3  division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining
4  Defendants and were at all times acting within the purpose and scope of such agency,
5  servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,
6  partnership or employment and with the authority, consent, approval and ratification
7  of each remaining Defendant.

8       8.    At all times herein mentioned, each Defendant was the co-conspirator,
9  agent, servant, employee, assignee and/or joint venturer of each of the other
10 Defendants and was acting within the course and scope of said conspiracy, agency,
11 employment, assignment and/or joint venture and with the permission and consent of
12 each of the other Defendants.

13      9.    Plaintiffs are informed, believe, and thereon allege, that Defendants, and
14 each of them, are, and at all material times relevant to this Complaint, performed the
15 acts alleged herein and/or otherwise conducted business in California.  Defendants,
16 and each of them, are corporations or other business entities, form unknown, have,
17 and are doing business in this judicial district.

18      10.   Plaintiffs are informed, believe, and thereon allege, that DOES 1 through
19 100, inclusive, are securitized trusts, equity funds, collateralized debt obligations
20 (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as
21 additional lenders, loan originators and/or are assignees to the loans which are the
22 subject of this action.  Plaintiffs will seek leave of Court to replace the fictitious
23 names of these entities with their true names when they are discovered by herein.

24      11.   The true names and capacities, whether individual, corporate, associate
25 or otherwise, of Defendants DOES 1 through 200, inclusive, and each of them, are
26 unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by
27 such fictitious names.  Plaintiffs allege, on information and belief, that each Doe
28 defendant is responsible for the actions herein alleged.  Plaintiffs will seek leave of

-4-

1  Court to amend this Complaint when the names of said Doe defendants have been
2  ascertained.

3      12.   Plaintiffs are informed, believe, and thereon allege, that at all times
4  relevant during the liability period, that Defendants, and each of them, including
5  without limitation those Defendants herein sued as DOES, were acting in concert or
6  participation with each other, or were joint participants and collaborators in the acts
7  complained of, and were the agents or employees of the others in doing the acts
8  complained of herein, each and all of them acting within the course and scope of said
9  agency and/or employment by the others, each and all of them acting in concert one
10  with the other and all together.

11

12                              **III.**

13                    **JURISDICTION AND VENUE**

14      13.   This Court has subject matter jurisdiction pursuant to 15 U.S.C §§ 1601
15  *et seq.* and 28 U.S.C. § 1331.

16      14.   This Court has personal jurisdiction over the parties in this action by the
17  fact that Defendants are either individuals who reside in this District within California
18  or are corporations duly licenced to do business in California.

19      15.   Venue is proper within this District and Division pursuant to 28 U.S.C.
20  §1391(b) because a substantial part of the events and omissions giving rise to the
21  claims occurred in this district, and because there is personal jurisdiction in this
22  district over the named Defendants because they regularly conduct business in this
23  judicial district.

24

25                              **IV.**

26            **FACTS COMMON TO ALL CAUSES OF ACTION**

27      16.   Defendants sold a variety of home loans.  The Option ARM or adjustable
28  rate mortgages are the loans sold by Defendants which are the subject of this

-5-

1    Complaint.

2        17.    The instant action arises out of residential mortgage loan transactions in
3    which Defendants failed to disclose pertinent information in a clear and conspicuous
4    manner to Plaintiffs and the Class members, in writing, as required by law.

5        18.    This action also concerns Defendants' unlawful, fraudulent and unfair
6    business acts or practices.  Defendants engaged in a campaign of deceptive conduct
7    and concealment aimed at maximizing the number of consumers who would accept
8    this type of loan in order to maximize Defendants' profits, even as Defendants knew
9    their conduct would cause many of these consumers to lose their homes through
10    foreclosure.

11        19.    Plaintiffs, along with thousands of other similarly situated consumers,
12    were sold Option ARM home loan by Defendants.  The Option ARM loan sold to
13    Plaintiffs and the Class is a deceptively devised financial product.  The loan has a
14    variable rate feature with payment caps.  The product was sold based on the promise
15    of a low, fixed interest rate, when in fact Plaintiffs and the Class members were
16    charged a different, much greater interest rate than promised.  Further, Defendants
17    disguised from Plaintiff the Class members the fact that Defendant HOME LOAN
18    CENTER, INC., dba LENDINGTREE LOANS' Option ARM loan product was
19    designed to, and did, cause negative amortization to occur.  Further still, once lured
20    into these loans, consumers cannot easily extricate themselves from these loans
21    because Defendants included a stiff and onerous prepayment penalty provision
22    making it extremely difficult to extricate themselves from the loans.

23        20.    The Option ARM loans Defendant HOME LOAN CENTER, INC., dba
24    LENDINGTREE LOANS sold to Plaintiffs and the Class members violates the Truth
25    in Lending Act ("TILA").  TILA is supposed to protect consumers; it mandates
26    certain disclosures be made by lenders to borrowers concerning the terms and
27    conditions of their home loans.  Defendants failed to make these disclosures in
28    connection with the Option ARM loan sold to Plaintiffs and the Class.

21.    At all times relevant, Defendants promoted their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants promoted to the general public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization. Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants' Option ARM loan product. However, the low fixed rate was illusory, a false promise. Plaintiffs and others similarly situated did not receive the benefit of the low rate promised to them. Once signed on to Defendants' loan, the interest rate applied to Plaintiffs' and Class members' loans was immediately and significantly increased.

22.    Plaintiffs and others similarly situated were consumers who applied for a mortgage loan through Defendants. During the loan application process, in each case, Defendants promoted, advertised, and informed Plaintiffs and the Class members that in accepting these loan terms, Plaintiffs would be able to lower their mortgage payment and save money. Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

23.    Based on the Defendants' representations, and the conduct alleged herein, Plaintiffs and Class members agreed to finance their primary residence through Defendants' Option ARM loan. Plaintiffs and Class members were told they were being sold a home loan with a low interest rate of between 1% and 3% (the "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years of the loan. Defendants also informed Plaintiffs, and Plaintiffs were lead to believe, that if they made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to them by Defendants, the loan was a no negative amortization home loan. Plaintiffs' payments were to be applied to their principal loan balances as well as to interest.

24.    After, the purported three (3) to five (5) year fixed interest period, Plaintiffs and the Class members reasonably believed, based on the representations

1    contained in the documents Defendants provided to Plaintiffs and the Class members,
2    that they would be able to refinance their loan and get a new loan before their
3    scheduled payments increased.  However, the payment schedule provided by
4    Defendants failed to disclose, and by omission failed to inform, these consumers that
5    due to the negative amortization that was purposefully built into these loans,
6    Plaintiffs and the Class members would be unable to refinance their homes as their
7    would be little or no equity left to refinance.

8         25.    Plaintiffs believed these facts to be true because that is what the
9    Defendants wanted consumers to believe.  Defendants aggressively marketed their
10   product as a fixed, low interest home loan.  Defendants knew that if marketed in such
11   a manner, their Option ARM loan product would be a hugely popular and profitable
12   product for them.  Defendants also knew, however, that they were marketing their
13   product in a false and deceptive manner.  While Defendants trumpeted their low,
14   fixed rate loans to the public, Defendants knew their promise of low, fixed interest
15   was illusory.

16        26.    In fact, Defendant HOME LOAN CENTER, INC., dba LENDINGTREE
17   LOANS' Option ARM loan possessed a low, fixed *payment* but not a low, fixed
18   interest rate.  Unbeknownst to Plaintiffs and Class members, the actual interest rate
19   they were charged on their loans was not fixed, was not the low teaser interest rate
20   stated in the loan documentation and was in fact considerably higher than going
21   market rates.  And, after purchasing Defendant's Option ARM loan product, Plaintiffs
22   and Class members did not actually receive the benefit of the low, teaser rate at all in
23   some cases, or at best, received that rate for only a single month.  Immediately,
24   thereafter, Defendants in every instance and for every loan, increased the interest rate
25   they charged consumers.  The now-increased interest charges incurred by Plaintiffs
26   and Class members over and above the fixed interest payment rate were added to the
27   principal balance on their home loans in ever increasing increments, substantially
28   reducing the equity in these borrowers' homes.

-8-

27.   In stark contrast to this reality, Defendants, through the standardized loan contracts they created and supplied to Plaintiffs and the Class, Defendants stated that negative amortization was only a possibility and would occur only if the payments were not sufficient. Defendants concealed and failed to disclose the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization. Defendants failed to disclose and omitted the objectively material fact that negative amortization would occur if the consumer followed the payment schedule set forth by Defendants in the loan documents. This information was objectively material and necessary for consumers to make an informed decision because this would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates re-set. In this respect, Defendants utterly failed to place any warning on the Truth in Lending Disclosure Statement about negative amortization.

28.   At all times relevant, once Plaintiffs and the Class members accepted Defendant's Option ARM loan contract, they had no viable option by which to extricate themselves from these loan because a substantial majority of these Option ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

29.   The Option ARM loans sold by Defendants all have the following uniform characteristics:

> (a)   There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiffs to enter into the loan. The rate offered was typically 1%-3%;
>
> (b)   The loan has with it a corresponding low payment schedule. The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low

interest rate being offered;

(c)    The initial payments in the required disclosures were equal to the low interest rate being offered.  The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule. This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d)    The payment has a capped annual increase on the payment amount; and

(e)    And for a substantial number of the loans, the loans included a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

30.    Defendants uniformly failed to disclose and by omission failed inform consumers, including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty(30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised, advertised rate.

31.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that the payments set forth in Defendant's schedule of payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause the Plaintiffs and the Class members to lose the equity they have in their home.

32.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

33. Disclosing whether a payment will result in negative amortization is of critical importance to consumers. If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences of negative amortization is a loss of equity. Defendants, and each of them, are and at all times relevant hereto, have been aware that clear and conspicuous disclosure of the actual interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely important material information.

34. At all times relevant, Defendants, and each of them, knew or should have known, or were reckless in not knowing, that: (I) the payment rate provided to Plaintiffs and the Class members was insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members' residence was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendant.

35. In spite of its knowledge, Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS marketed its ARM loans as product that would provide Plaintiffs and the Class members with a low interest rate for the first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated. Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

36. The true facts about Defendant HOME LOAN CENTER, INC., dba

-11-

1  LENDINGTREE LOANS' ARM loans is that they do not provide the low interest
2  rate promised, and are certain to result in negative amortization.
3       37.    Disclosure of a payment rate that is sufficient to pay both principle and
4  interest on the loans is of critical importance consumers.  If the disclosed payment
5  rate is insufficient to pay both principle and interest, one of the consequences is that
6  negative amortization or loss of equity will occur.  Defendants, and each of them, are
7  and at all times relevant hereto, have been aware that the ability of the disclosed
8  payment rate to pay both principle and interest so as to avoid negative amortization is
9  one of the most important terms of a loan.
10      38.    To this day, Defendants continue to conceal material information from
11 consumers, and the public, that: (I) the payment rate provided to Plaintiffs and the
12 Class members is and was insufficient to pay both principle and interest; (ii) if the
13 disclosed payment schedule is followed, Plaintiffs and the Class members will suffer
14 negative amortization; and (iii) loss of equity and/or possession of the property is
15 substantially certain to occur if the disclosed payment schedule is followed.
16 Nevertheless, Defendants have refused to clearly and conspicuously disclose to
17 Plaintiffs and the Class members the existence of this important material information
18 and the injury caused thereby, including but not limited to the loss of equity.
19      39.    In the end, the harm caused by Defendants' failures to disclose and
20 omissions grossly outweighs any benefit that could be attributed to them.
21      40.    Knowing the truth and motivated by profit and market share, Defendants
22 have knowingly and willfully engaged in the acts and/or omissions to mislead and/or
23 deceive Plaintiffs and others similarly situated.
24      41.    The ARM loans have resulted and will continue to result in significant
25 loss and damage to Plaintiffs and  the Class Members, including but not limited to the
26 loss of equity these consumers have or had in their homes.
27      42.    The facts which Defendant HOME LOAN CENTER, INC., dba
28 LENDINGTREE LOANS misrepresented and concealed, as alleged in the preceding

1  paragraphs, were material to the decisions about whether to purchase the ARM loans

2  in that Plaintiffs and others similarly situated would not have purchased these loans

3  but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices

4  as alleged herein.

5       43.    Defendant HOME LOAN CENTER, INC., dba LENDINGTREE

6  LOANS engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive

7  marketing scheme to induce consumers to purchase their ARM loans.

8       44.    Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts

9  and/or practices were committed with willful and wanton disregard for whether or not

10  Plaintiffs or others similarly situated would, in fact, receive a home loan that would

11  actually provide the low interest and payment rate, as promised, for the first three (3)

12  to five (5) years of the loan that is sufficient to pay both principle and interest.

13       45.    Upon information and belief and at all times relevant, Defendants

14  possessed full knowledge and information concerning the above facts about the ARM

15  loans, and otherwise marketed and sold these ARM loans throughout the United

16  States, including the State of California.

17

18                                 **V.**

19                **CLASS ACTION ALLEGATIONS**

20       46.    Plaintiffs bring this action on behalf of themselves, and on behalf of all

21  others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure,

22  Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiffs seek to

23  represent are defined as follows:

24

25       **The California Class:**  All individuals who, within the four

26       year period preceding the filing of Plaintiffs' Complaint

27       through the date notice is mailed to the Class, received an

28       Option ARM loan through Defendant HOME LOAN

-13-

1    CENTER, INC., dba LENDINGTREE LOANS on their

2    primary residences located in the State of California.

3    Excluded from the California Class are Defendants'

4    employees, officers, directors, agents, representatives, and

5    their family members; and

6

7    **The National Class**: All individuals in the United States of

8    America who, within the four year period preceding the

9    filing of Plaintiffs' Complaint through the date notice is

10    mailed to the Class, received an Option ARM loan through

11    Defendant HOME LOAN CENTER, INC., dba

12    LENDINGTREE LOANS on their primary residences

13    located in the United States of America.  Excluded from the

14    National Class are Defendants' employees, officers,

15    directors, agents, representatives, and their family members.

16

17    An appropriate sub-Class exists for the following Class Members:

18

19    All individuals in the United States of America who, within

20    the three year period preceding the filing of Plaintiffs'

21    Complaint through the date notice is mailed to the Class,

22    received an Option ARM loan through Defendant HOME

23    LOAN CENTER, INC., dba LENDINGTREE LOANS on

24    their primary residences located in the United States of

25    America.  Excluded from the National sub-Class are

26    Defendants' employees, officers, directors, agents,

27    representatives, and their family members.

28

-14-

1    Plaintiffs reserve the right to amend or otherwise alter the Class definitions
2    presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in
3    response to facts learned through discovery, legal arguments advanced by Defendants
4    or otherwise.

5        47.    <u>Numerosity</u>: The Class is so numerous that the individual joinder of all
6    members is impracticable under the circumstances of this case.  While the exact
7    number of Class members is unknown at this time, Plaintiffs are informed and believe
8    that the entire Class or Classes consist of thousands of members.

9        48.    <u>Commonality</u>: Common questions of law or fact are shared by the Class
10   members.  This action is suitable for class treatment because these common questions
11   of fact and law predominate over any individual issues.  Such common questions
12   include, but are not limited to, the following:

13           (a)    Whether Defendants' acts and practices violate the Truth in
14                  Lending Act;
15           (b)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;
16           (c)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;
17           (d)    Whether Defendants engaged in unfair business practices aimed at
18                  deceiving Plaintiffs and the Class members before and during the
19                  loan application process;
20           (e)    Whether Defendants, by and through their officers, employees,
21                  and agents failed to disclose that the interest rate actually charged
22                  on these loans was higher than the rate represented and promised
23                  to Plaintiffs and the Class members;
24           (f)    Whether Defendants, by and through their officers, employees and
25                  agents concealed, omitted and/or otherwise failed to disclose
26                  information they were mandated to disclose under TILA;
27           (g)    Whether Defendants failed to disclose the true variable nature of
28                  interest rates on adjustable rate mortgage loans and adjustable rate

-15-

home equity loans;

(h)   Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(i)   Whether Defendants' failure to apply Plaintiffs' and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(j)   Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(k)   Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(l)   Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(m)   Whether Plaintiffs and the Class are entitled to damages;

(n)   Whether Plaintiffs and the Class members are entitled to punitive damages; and

(o)   Whether Plaintiffs and the Class members are entitled to rescission.

49.   Typicality:  Plaintiffs' claims are typical of the claims of the Class members.  Plaintiffs and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiffs and the other Class members are based on the same legal theories.

50.    <u>Adequacy</u>:  Plaintiffs are adequate representative of the Class because their interests do not conflict with the interests of the other members of the Class Plaintiffs seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend on prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

51.    <u>Ascertainable Class</u>:  The proposed Classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

52.    This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

(a)    <u>Risk of Inconsistent Judgments</u>:  The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each Class member.  Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class members to protect their interests;

(b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>: Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

(c)    <u>Predominant Questions of Law or Fact</u>:  Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will

allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.   Further, an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

**VI.**

**FIRST CAUSE OF ACTION**

**Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.***

**(Against All Defendants)**

A.    **Defendants' Failure to Clearly and Conspicuously Disclosure A Single APR Violates Truth in Lending Laws**

53.    15 U.S.C. § 1638(a)(4) requires lenders to disclose only one annual percentage rate ("APR") and not an additional APR that is only applicable for the first 30 days of a loan.

54.    The Federal Reserve Board's ("FRB") Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."

55.    15 U.S.C. § 1638(a)(8) and 12 C.F.R § 226.18(e) also require lenders to provide a descriptive explanation of the APR.

56.    12 C.F.R .§ 226.18 (e) defines " APR" as the cost of credit expressed as a yearly rate.

57.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require lenders to make

-18-

1   disclosures concerning the APR in a clear and conspicuous manner and a misleading

2   disclosure is as much a violation of TILA as a failure to disclose at all.

3       58.    In addition, the FRB's Commentary § 226.17(a)(1)-1 provides that

4   TILA's clear and conspicuous requirement applies to the disclosure and explanation

5   of the cost of the loan as an APR, and where there is a contradiction between the

6   TILDS and other information provided to the borrower, the disclosure is unclear.

7       59.    At all times relevant during the liability period, Defendant HOME

8   LOAN CENTER, INC., dba LENDINGTREE LOANS provided Plaintiffs and the

9   Class members with Notes that state, at ¶ 2 (A), "I will pay interest at a *yearly rate* of

10  1.250%." However, in the TILDS , in the box entitled "ANNUAL PERCENTAGE

11  RATE" it describes the APR as "[t]he cost of your credit as a *yearly rate*" and then

12  lists an APR of "7.189%."

13      60.    At all times relevant during the liability period, Defendant violated §

14  226.17(a)(1)-1 by listing two completely different APRs  in the loan documents.   In

15  particular, for Plaintiffs, the TILDS lists an APR of 7.189%.  However, the Note lists

16  an APR of "1.250%."  Thus, the "1.250%" APR stated in the Note contradicts the

17  "7.189%" APR Defendant stated in the TILDS.

18      61.    At all times relevant during the liability period, Defendants failed to

19  clearly and conspicuously explain in the Note or TILDS that the low APR (the same

20  APR upon which Defendants base the written payment schedule provided to

21  Plaintiffs) was only offered for the first thirty (30) days of the loan.

22      62.    At all times relevant during the liability period, Defendants also failed to

23  clearly, conspicuously and accurately disclose the APR that it charged Plaintiffs and

24  the Class members' on their loans.  Defendants also failed to disclose, and by

25  omission, failed to inform Plaintiffs and the Class members that the APR listed in the

26  TILDS was not the APR used to determine the first three years of payments listed in

27  the very same TILDS; rather, Defendants listed payment amounts for the first three

28  years of the loan based on the APR listed in the Note which was correct for *only* thirty

1  days.

2    63.    At all times relevant during the liability period, Defendants created and

3  caused the contradiction in the loan documents by purposefully disclosing two

4  different APR's in the loan documents it provided to Plaintiffs and the Class

5  members.

6

7  **B.**    **Defendants' Failure to Clearly and Conspicuously Disclose That the**

8    **Payment Schedules Are Not Based on the APR Stated in the TILDS**

9    **Violates TILA**

10    64.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make

11  disclosures concerning the annual interest rate and payments in a clear and

12  conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA

13  as a failure to disclose at all.

14    65.    As for Plaintiffs and the Class members Option ARM loans, Defendants

15  violated 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that they failed to clearly and

16  conspicuously disclose the annual interest rate upon which the payments listed in the

17  TILDS are based.

18    66.    The scheduled payment amounts and APR listed in the Note and TILDS

19  for each of the subject loans are unclear and inconspicuous.  In fact, the payment

20  amounts for the first three to  five years are not based on the APR listed in the TILDS

21  but instead, were based upon an APR listed in the Note, which in fact existed for only

22  thirty (30) days.

23    67.    At all times relevant, Defendants knowingly and intentionally included

24  in each of the TILDS a schedule of payments that was not based upon the interest rate

25  listed in these same documents.  Defendants' failure to clearly and conspicuously

26  disclose the payment amounts due based on the listed APR was, and is, deceptive.

27    68.    Further, in addition to Defendants' failure to disclose in the Note and the

28  TILDS that the payments listed were not based upon the APR listed, Defendants

knowingly and intentionally expressly and/or impliedly represented in the loan
documents that the payments would be applied to both principal and interest.
However, in truth, if Plaintiffs followed the payment schedule provided by
Defendants, the payments were guaranteed to be insufficient to pay the principal and
interest on the loan.

69.    At all times relevant, Defendants failed to clearly and conspicuously
disclose to Plaintiffs and the Class members that if they made payments according to
the payment schedule set forth in the TILDS, negative amortization was not just a
mere possibility, it was an absolute certainty.

70.    At all times relevant, Defendants purposefully and intentionally failed
to disclose to Plaintiffs, and all others similarly situated, the annual interest rate upon
which the payment schedule was based in order to mislead and deceive Plaintiffs and
Class members into believing that they would be getting a loan with a low fixed
payment rate that would be sufficient to pay both interest and principal.

71.    At all times relevant, the payment amount provided by Defendants was
intended to and did deceive consumers into falsely believing they would, in fact,
receive the low interest rate upon which the payment schedule is based.  While the
Note states the amount of Plaintiffs' initial monthly payment, however, the initial
monthly payment amounts stated in the Note and TILDS are not, in anyway related to
the interest rate listed in the Note(s) and TILDS.

72.    Defendants employed the aforementioned bait-and-switch tactics in a
common and uniform class-wide basis.  In particular, had Defendants clearly and
conspicuously disclosed a payment amount sufficient to cover both principle and
interest, the payment amounts would have to have been almost double the payment
amounts listed.

73.    The TILDS are also deceptive for much the same reason.  The TILDS
list a schedule of payments, but for up to the five years the listed payment amounts
have no relation to, and are also not based on, the annual interest rate listed in the

TILDS.

74.    At all times relevant, Defendants failed to clearly, conspicuously, and accurately disclose a payment amount that corresponds to the APR being charged on the loan and that was sufficient to pay the true costs of the loan.  Plaintiffs and the Class members reasonably believed that if they made the payments according to Defendants' payment schedule, the payments would, in fact, be paying off the loan.  However, the true fact is that the payment amounts stated in Defendants' payment schedule did not include any principal on the loans at all and only covered a portion of the interest Defendants were charging on these loans.

75.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form.  For example, while the regulation requires no mathematical progression or format, **_the disclosures must be presented in a way that does not obscure the relationship of the terms to each other_**…"

76.    At all times relevant, Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS' Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first five years of the loans, bear no relationship to the APR listed in the TILDS.  Therefore, as a direct and proximate result, the form of disclosure used by Defendants obscured the relationship between the APR listed in the Note(s) and the APR listed in the TILDS and the payment schedule.

C.    **Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

77.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.  Certain residential mortgage and variable-rate transactions.** . . .

(b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . . (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

78.    The negative amortization disclosure is required and must be made clearly and conspicuously, and done in a manner that does not obscure its significance. The disclosure must state whether the loan and payments established under the terms dictated by the Defendants is a negative amortizing loan.

79.    In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, the disclosure requires a definitive statement about negative amortization:

12 CFR Part 226

[Regulation Z; Docket No. R-0863]

Monday, April 3, 1995

AGENCY: Board of Governors of the Federal Reserve System.

ACTION: Final rule; official staff interpretation.

"For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of

-23-

1   exercising it (such as **negative amortization**

2   **occurs** and that the principal balance **will**

3   **increase**)…" (Found at C.F.R. § 226.19)

4   80.   At all times relevant, statutory and common law in effect make it

5   unlawful for a lender, such as Defendant HOME LOAN CENTER, INC., dba

6   LENDINGTREE LOANS, to fail to comply with the Federal Reserve Board's

7   Official Staff Commentary as well as Regulation Z and TILA.

8   81.   Defendants sold Plaintiffs and the Class members Option ARM loans

9   which have a variable rate feature with payment caps.  Defendants failed to include

10  any reference in the TILDS or in the Note(s) that negative amortization would occur

11  if Plaintiffs and the Class members followed the payment schedule provided by

12  Defendants.

13  82.   In fact, the only place in the Note where Defendants even inferentially

14  references negative amortization caused Plaintiffs and all other similarly situated

15  reasonable persons to believe that negative amortization is only a mere possibility,

16  rather than an absolute certainty.  In fact, these loans were designed in such a way so

17  as to make negative amortization an absolute certainty.  And, even when a separate

18  explanation was provided, Defendants omitted the important material fact that these

19  loans and payment schedules would, in fact, guarantee negative amortization.

20  83.   Defendants' statement in the Note(s), at ¶ 3(E) states only, "[m]y

21  monthly payment *could* be less than the amount of the interest portion of the monthly

22  payment that would be sufficient to repay the unpaid principal I owe at the monthly

23  payment date in full on the Maturity Date in substantially equal payments." This was

24  a half-truth at best, and it does not alert or inform Plaintiffs that the payment schedule

25  provided by Defendants would absolutely guarantee that negative amortization was

26  going to occur on these loans.  Rather, Defendants made it appear that as long as the

27  payments were made according to the schedule listed in the TILDS, that there would

28  be no negative amortization.

84.    At all times relevant, Defendants' statement in the Note, TILDS, and any other disclosures they provided, described negative amortization as only a mere possibility, and therefore was misleading and deceptive.  In fact, Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS' Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment could be less, or "may" be less, when Defendants knew that the payments were less, and would always be less, than the full amount required to pay both principle and interest.

**D.**    **Defendants' Failure to Clearly and Conspicuously Disclose The Legal Obligation Violates Truth in Lending Laws**

85.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal obligation between the parties."

86.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that: "[t]he disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction.  In the case of disclosures required under § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the disclosures are provided."

87.    The Official binding staff commentary further states, at 12 C.F.R. § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or contract that evidences the agreement."

88.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures."

89.    At all times relevant during the liability period, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not

-25-

1  disclose, and by omission, failed to disclose what Plaintiffs and the Class members

2  were legally obligated to pay.  In particular, the Note(s) charged these borrowers a

3  much higher monthly amount than what Defendants disclosed.  Defendants

4  accomplished this deception by only listing a partial payment in the TILDS, rather

5  than a payment amount that was sufficient to pay what these  borrowers were actually

6  being charged for their loans, and were purportedly legally obligated to pay.

7       90.    As a direct and proximate result of Defendants' omissions and failures to

8  clearly and conspicuously disclose Plaintiffs' and the Class members' legal

9  obligations under the loans, Defendants took the partial payments and secretly added

10  the deficit, each month, to principal, thereby causing negative amortization to occur.

11

12  **E.**    **Defendants' Failure to Disclose the Composite APR Violates Truth**

13        **in Lending Laws**

14       91.    Defendants provided Plaintiffs and the Class members with multiple,

15  conflicting annual interest rates when describing the costs of this loan.  On the

16  TILDS, Defendants set forth one annual interest rate, while on the Note, Defendants

17  set forth a different annual interest rate.

18       92.    The FRB's Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the

19  APR must "reflect a composite annual percentage rate based on the initial rate for as

20  long as it is charged and, for the remainder of the term, the rate that would have been

21  applied using the index or formula at the time of consummation."

22          "in a variable-rate transaction with a...discounted or

23          premium rate, *disclosures should not be based solely on the*

24          *initial terms*. In those transactions, *the disclosed annual*

25          *percentage rate should be a composite rate* based on the

26          rate in effect during the initial period and the rate that is the

27          basis of the variable-rate feature for the remainder of the

28          term."

-26-

93.    The reason for this requirement is clear.  Consumers cannot make an informed decision when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon lenders to show the composite interest rate in effect so that the borrowers can understand exactly what they will be paying for the loan.

94.    A lender violates TILA, and Reg. Z  by failing to list the composite annual interest rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiffs and Class members by Defendants is a variable-rate loan.  At all times relevant during the liability period, Defendants listed an annual interest rate in the Note(s) that, in truth, would only be provided for the first thirty (30) to forty-five (45) days of a thirty year loan, and would, with one hundred percent certainty, be increased after that first month.  Because Defendants failed to clearly and conspicuously disclose the composite annual percentage rate on these loans, and instead listed a different interest rate in the documents provided to consumers, Defendants violated TILA and Regulation Z, and failed to provide disclosures that did not obscure relevant information.

F.    **Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates TILA**

95.    Variable rate loans are based on a "margin" and an "index."  The index is often the Prime Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over and above that indexed rate.

96.    TILA and Regulation Z require that when the interest rate on a loan is a "discounted rate" ( i.e., not based on the index and margin) a separate disclosure is required.  The disclosure must also inform borrowers that, after the discounted rate falls away, the interest rate will increase and it must conspicuously describe all of the circumstances under which the interest rate will increase.  Further, the disclosure must inform the borrower what the true cost of the loan is.

97.    The Federal Reserve Board established disclosure requirements for

1    variable rate loans. 26 C.F.R. § 226.19 requires lenders to disclose the frequency of

2    interest rate and payment adjustments to borrowers. If interest rate changes will be

3    imposed more frequently or at different intervals than payment changes, a creditor

4    must disclose the frequency and timing of both types of changes.

5        98.    The Notes at issue only stated that the interest rate "may" increase in the

6    future. However, it was absolutely certain, and not merely possible, that the interest

7    rate would increase above the discounted annual interest rate after thirty (30) days.

8    At all times relevant, Defendants failed to clearly, conspicuously and unambiguously

9    disclose this critical fact as required by law.

10       99.    Further violating TILA's disclosure requirements, Defendants' loan

11   documents state that the interest rate **may** increase during the term of this transaction

12   if the index increases. That statement is incomplete and misleading, as an increase in

13   the index was not the only thing that could cause an increase in the interest rate.

14   Because the disclosed interest rate was discounted, it was absolutely certain to

15   increase even without any change in the index. Thus, Defendants' disclosures were

16   unclear, inconspicuous, ambiguous and misleading in violation of TILA.

17       100.   Defendant failed to disclose, and by omission, failed to inform Plaintiffs

18   and the Class members that the initial interest rate was discounted, and that it was

19   absolutely certain to increase even when the index did not rise. Due to the initial

20   discounted interest rate being listed at 1.250%, the interest rate would increase

21   because the index and margin were several points higher. Even when Defendants did

22   provide a disclosure that stated the initial payment was not based on the index, they

23   did so in a manner that was not clear and conspicuous. Because the loan documents

24   failed to provide this extremely important material information in a clear and

25   conspicuous manner that did not obscure its importance, Defendants' disclosure failed

26   to satisfy the requirements of TILA.

27       101.   Defendants failed to disclose to Plaintiffs and the Class members that

28   their interest rate was, with 100% certainty, going to increase, regardless of whether

-28-

the index upon which their loans are based changed. As such, Defendants violated TILA and Regulation Z by providing Plaintiffs and the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

102.   Defendants also failed to disclose all of the ways by which the interest rate applicable to Plaintiffs' and Class members' loans could increase, in violation of TILA.

### G.    Defendants' Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws

103.   The Option ARM loans at issue contained a variable rate feature with an initial teaser rate with payment caps. The payment cap is a limit on how much the payment may be increased annually. Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year. The loans issued by Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS had a 7.5% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.5%. (i.e. a $1,000 monthly payment in year one, could go to a $1,075 payment in year two.)

104.   The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times relevant during the liability period, Defendants had a duty to Plaintiffs and the Class members to disclose in the payment schedule of the TILDS the effect the payment cap would have on the loans.

105.   Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the payment cap would cause hundreds, if not thousands

1 of dollars, each month, to be secretly added to principle.

2      106.  As a direct and proximate result, Defendants failed to disclose, and by

3 omission, failed to inform Plaintiffs and the Class members of the effect of the

4 payment cap in violation of 12 C.F.R. § 226.17.

5      107.  The violations of TILA and Regulation Z described in this Complaint are

6 apparent on the face of the Note, TILDS and other disclosure documents provided to

7 Plaintiffs and the Class because the disclosures provided can be determined to be

8 incomplete or inaccurate by a comparison among the TILDS, the other disclosure

9 statements, and the Note described herein.

10      108.  As a direct and proximate result of Defendants' violations of TILA, as

11 alleged herein, Plaintiffs and the Class members have suffered injury in an amount to

12 be determined at time of trial.  If Defendants had not violated TILA and had instead

13 clearly and conspicuously disclosed the material terms of Defendants' Option ARM

14 loan, as alleged herein, Plaintiffs and the Class members would not have entered into

15 the home loan contracts which are the subject of this action.  Because Defendants

16 failed to make the proper disclosures required under TILA, Plaintiffs and the Class

17 members now seek redress in an amount and/or type as proven at time of trial.

18      109.  WHEREFORE, Plaintiffs and the Class members are entitled to an order

19 declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and

20 the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. §

21 226.23, attorneys fees, litigation costs and expenses and costs of suit, and for an order

22 rescinding Plaintiffs' individual mortgage and those of any class member desirous of

23 such relief, and for an order awarding other relief as the Court deems just and proper.

24

25 **VII.**

26 **SECOND CAUSE OF ACTION**

27 **Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200**

28 *et. seq. -*

-30-

**"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

**(Against All Defendants)**

110.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

111.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as a private attorneys general against all Defendants for their unlawful business acts and/or practices pursuant to California Business & Professions Code §§17200, *et seq.*, which prohibits all unlawful business acts and/or practices.

112.    Plaintiffs assert these claims as representatives of an aggrieved group and as a private attorneys general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business & Professions Code §§ 17200, *et seq.*

113.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

114.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, *et seq.*

115.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of Business & Professions Code §§17200, *et seq.* These predicate unlawful business acts and/or practices include Defendants failure to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above, Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan to Plaintiffs and the Class members

-31-

1  as required under TILA.

2      116.  Defendants' misconduct as alleged herein gave Defendants an unfair

3  competitive advantage over their competitors.

4      117.  As a direct and proximate result of the aforementioned acts, Defendants,

5  and each of them, received monies and continues to hold the monies expended by

6  Plaintiffs and others similarly situated who purchased the ARM loans as described

7  herein.

8      118.  In addition to the relief requested in the Prayer below, Plaintiffs seek the

9  imposition of a constructive trust over, and restitution of, the monies collected and

10  realized by Defendants.

11      119.  The unlawful acts and practices, as fully described herein, present a

12  continuing threat to members of the public to be mislead and/or deceived by

13  Defendants as described herein.  Plaintiffs and other members of the general public

14  have no other remedy of law that will prevent Defendants misconduct as alleged

15  herein from occurring and/or reoccurring in the future.

16      120.  As a direct and proximate result of Defendants' unlawful conduct alleged

17  herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of

18  equity in their homes.  Plaintiffs and the Class members are direct victims of the

19  Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact,

20  and have lost money or property as a result of Defendants' unfair competition.

21      121.  WHEREFORE, Plaintiffs and members of the Classes are entitled to

22  equitable relief, including restitution, restitutionary disgorgement of all profits

23  accruing to Defendants because of their unlawful and deceptive acts and practices,

24  attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining

25  Defendants from their unlawful activity.

26

27                                    **VIII.**

28                        **THIRD CAUSE OF ACTION**

**Fraudulent Omissions**

**(Against All Defendants)**

122.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

123.   As alleged herein, pursuant to TILA, 15 U.S.C. §§1601, *et seq.*, Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to Plaintiffs, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

124.   Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS further had a duty to disclose to Plaintiffs, and each Class member (I) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based upon Defendants' partial representations of material facts when Defendants had exclusive knowledge of material facts that negative amortization was certain to occur.

125.   The Note(s) state at ¶ 3 (A) "I will pay *principal and interest* by making payments every month."  The Note(s) then state, at  ¶ 7(A), under the heading "BORROWERS FAILURE TO PAY AS REQUIRED," that "[t]he amount of the charge will be 5.000% of *my overdue payment of principal and interest*."  However, the true facts are that the payment amounts shown in the schedules provided by Defendants were completely insufficient to pay both principal and interest.  In fact, the payment amounts provided in the TILDS were not even sufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s) was absolutely certain to occur.

126.   The Note(s) further state, at ¶ 3(E) that "My monthly payment *could be less* than the amount of the interest portion of the monthly payment that would be

1   sufficient to repay the unpaid principal. . ." and, for "each month that my monthly

2   payment is less than the interest portion, the Note Holder will subtract the amount of

3   my monthly payment from the amount of the interest portion and will add the

4   difference to my unpaid principal." It goes on to state that "[t]he Note Holder also

5   will add interest on the amount of this difference to my unpaid principal." However,

6   the payment schedules provided by Defendants in the TILDS were absolutely

7   incapable of covering the amount of interest due and therefore these statements were

8   false in that they omitted this material fact.

9          127.  The Note(s) list an interest rate and a payment amount based on that

10  initial 1.250% interest rate. However, the TILDS Defendants gave to Plaintiffs and

11  the Class members include the schedule of payments (including that initial payment

12  rate) which discloses a different, higher interest rate. In truth, the payment schedule

13  stated in the TILDS is wholly unrelated to the true interest rate being charged on the

14  loans and, at all times relevant during the liability period, Defendants failed to

15  disclose, and by omission, failed to inform Plaintiffs and the Class members of this

16  important material information.

17         128.  The aforementioned omitted information was not known to Plaintiffs and

18  the Class members and which, at all times relevant, Defendants failed to disclose

19  and/or actively concealed by making such statements and partial, misleading

20  representations to Plaintiffs and all others similarly situated. Because the Option

21  ARM loans did not provide a low interest rate for the first three (3) to five (5) years of

22  the Note, and the payment rate disclosed by Defendants was insufficient to pay both

23  principle and interest, negative amortization occurred.

24         129.  Defendants, and each of them, failed to disclose, and by omission failed

25  to inform Plaintiffs and each Class member that (I) the payment rate provided to

26  Plaintiffs and the Class members on the TILDS was insufficient to pay both principle

27  and interest; (ii) that negative amortization was absolutely certain to occur if

28  Plaintiffs and the Class members made payments according to the payment schedule

-34-

provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members' residence was substantially certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants.

130.  As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted.  The concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated.  Because the Option ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the payment rate disclosed by Defendants was insufficient to pay both principle and interest, negative amortization occurred.

131.  From the inception of the Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and the Class members, regarding the true facts concerning the actual interest rate charged on the loans, that negative amortization that was certain to occur, and that the initial interest rate, in fact, was discounted, all of which Defendants were duty bound to clearly and conspicuously disclose to Plaintiffs and the Class members in the TILDS.

132.  Defendants have known from the inception of their Option ARM loan scheme that these loans, (I) do not provide the promised annual interest rate for the first three (3) to five (5) years of the Note, (ii) that negative amortization would occur and that Plaintiffs' and the Class members' principle balances would increase, and (iii) that the initial interest rate was discounted and did not accurately reflect the

-35-

1  interest that consumers were being charged on the loans.

2      133.   Defendants purposefully and intentionally devised this Option ARM

3  loan scheme to defraud and/or mislead consumers into believing that these loans

4  would provide a low-interest rate loan, for the first three (3) to five (5) years of the

5  note and that if they made their payments according to the payment schedule provided

6  by Defendants that it would be sufficient to pay both principle and interest.

7      134.   The omitted information, as alleged herein, was material to Plaintiffs and

8  each Class member in that had the information be disclosed, Plaintiffs and each Class

9  member would not have entered into the loans.

10      135.   As a direct and proximate result of Defendants' failures to disclose and

11  omission of material facts, as alleged herein, Plaintiffs and each Class member have

12  suffered damages, which include, but are not limited to the loss of equity Plaintiffs

13  and each Class member had in their homes prior to entering these loans.

14      136.   The wrongful conduct of Defendants, as alleged herein, was willful,

15  oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and

16  in conscious disregard for the well being of Plaintiffs, and others similarly situated.

17  Accordingly, Plaintiffs, and the others similarly situated seek punitive damages

18  against Defendants in an amount to deter Defendants from similar conduct in the

19  future.

20      137.   WHEREFORE, Plaintiffs and members of the Class are entitled to all

21  legal and equitable remedies provided by law, including but not limited to actual

22  damages, exemplary damages, prejudgment interest and costs.

23

24                              **IX.**

25                    **FOURTH CAUSE OF ACTION**

26  **Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 _et_**

27                              **_seq.,_**

28        **"Unfair" and "Fraudulent" Business Acts or Practices**

-36-

**(Against All Defendants)**

138.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

139.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and as a private attorneys general against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business & Professions Code §§ 17200, *et seq.*, which prohibits all unfair and/or fraudulent business acts and/or practices.

140.    Plaintiffs assert these claims as a representative of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business & Professions Code §§ 17200, *et seq.*

141.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

142.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan.  Defendants, and each of them, marketed and sold Plaintiffs and the Class members a deceptively devised financial product.  Defendants marketed and sold their Option ARM loan product to consumers, including Plaintiffs, in a false or deceptive manner.  Defendants marketed and advertised to the general public through brochures, flyers and other substantially identical marketing material, a loan which appeared to have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Further, Defendants disguised from

1    Plaintiffs and the Class members the fact that Defendants' Option ARM loan was

2    designed to, and did, cause negative amortization to occur.

3         143.   Defendants lured Plaintiffs and the Class members into the Option ARM

4    loan with promises of low fixed interest.  Once Plaintiffs and the Class members

5    entered into these loans, Defendants switched the interest rate charged on the loans to

6    a much higher rate than the one they advertised and promised to Plaintiffs and the

7    Class members.  After entering these loans, Class members could not escape because

8    Defendants purposefully placed into these loans an extremely onerous prepayment

9    penalty that made it prohibitively expensive for consumers to extricate themselves

10   from these loans.  Thus, once on the hook, consumers could not escape from

11   Defendants loans.

12        144.   Plaintiffs and Class members were consumers who applied for a

13   mortgage loan through Defendants.  During the loan application process, in each case,

14   Defendants uniformly promoted, advertised, and informed Plaintiffs and Class

15   members that in accepting these loan terms, Plaintiffs and Class members would be

16   able to lower their mortgage payment and save money.

17        145.   Defendants promoted their Option ARM loan as having a low fixed

18   interest rate, i.e., typically between 1% and 3%.  However, Defendants did not

19   disclose that this was just a "teaser" rate, the purpose of which was to get consumers

20   to enter into loan agreements with Defendants.  Defendants did not disclose to

21   Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that

22   Defendants would actually charge Plaintiffs and the Class members on their

23   outstanding loan balances.

24        146.   Based on the Defendants' representations and conduct, Plaintiffs and the

25   Class members agreed to finance their primary residence through Defendants' Option

26   ARM loan.  Plaintiffs and the Class members were told they were being sold a home

27   loan with a low interest rate, fixed for the first three (3) to five (5) years of the loan.

28   Plaintiffs and the Class members were also lead to believe that if they made payments

1  based on this advertised interest rate, and the payment schedule provided to them by
2  Defendants, the loan was a no negative amortization home loan.  After, the fixed
3  interest period, Plaintiffs and the Class members were told their rate "may" change.
4  And, Plaintiffs believed they would then be able to re-finance to another home loan.
5  Plaintiffs and the Class members believed these facts to be true because that is what
6  the Defendants wanted consumers to believe, that is what Defendants lead consumers
7  to believe.  Plaintiffs and each Class member relied on Defendants' misleading
8  statements and omissions concerning the terms and conditions of Defendants' Option
9  ARM loan and Plaintiffs and each Class member entered into these Option ARM
10 loans as a result of Defendants' misleading statements and omissions concerning the
11 terms and conditions as alleged herein.

12      147.  Defendants aggressively sold their product as a fixed low interest home
13 loan.  Defendants knew that if marketed in such a manner, their Option ARM loan
14 product would be a hugely popular and profitable product for them.  Defendants also
15 knew, however, that they were marketing their product in a false and deceptive
16 manner.  While Defendants trumpeted their low, fixed rate loans to the public,
17 Defendants knew, however, that this was not entirely true.

18      148.  In fact, Defendants' Option ARM loan possessed a low, fixed *payment*
19 but not a low, fixed interest rate.  Unbeknownst to Plaintiffs and Class members, the
20 actual interest rate they were charged on their loans was not fixed.  After purchasing
21 Defendants' Option ARM loan product, Plaintiffs and class members never actually
22 received the benefit of the low advertised interest rate, or, in some cases, consumers
23 received the low rate for just a single month.  Immediately, thereafter, Defendants in
24 every instance and for every loan increased the interest rate they charged Plaintiffs
25 and the Class members.  Once Plaintiffs and Class members accepted Defendants'
26 Option ARM loan, they had no viable option to extricate themselves because of these
27 loan agreements included a draconian pre-payment penalty.

28      149.  Defendants perpetrated a bait and switch scheme on Plaintiffs and Class

-39-

members.  Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

150.  The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

151.  By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, *et seq.*

152.  Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

153.  Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

154.  As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein.

155.  In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

156.  The harm to Plaintiffs, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code §§ 17200, *et seq.*

157.   The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants' ARM loans as described herein.  Plaintiffs and other members of the general public have no other remedy of law that will prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring in the future.

158.   As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and Class members are direct victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

159.   WHEREFORE, Plaintiffs and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

## X.
## FOURTH CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

160.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

161.   Plaintiffs and Class members entered into a written home loan agreement – the contract or Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiffs or Class members.  The Note describes terms and respective obligations applicable to the parties herein.

162.   The Note describes Plaintiffs' and Class members' interest rate on the

-41-

1    loan as a low interest rate, typically between 1% and 3%. In addition, as required by
2    federal law, the Defendants provided a Truth In Lending Disclosure concerning the
3    home loan agreement that shows a payment schedule based on that low 1% to 3%
4    interest rate. For the first three (3) to five (5) years the payment schedule shows that
5    Plaintiffs' and Class members' monthly payment obligations to Defendants are the
6    exact payments necessary to pay off all principal and interest during the terms of the
7    loans if, indeed, the interest rate actually charged by Defendants on the loans was the
8    low interest rate promised.

9         163.   Defendants drafted the Note and did not allow Plaintiffs or the Class
10   members any opportunity to make changes to the Note and due to Defendants'
11   superior bargaining position, the Note was offered on a take it or leave it basis. As
12   such, the Notes at issue are contracts of adhesion.

13        164.   Defendants expressly and/or through their conduct and actions agreed
14   that Plaintiffs' and the Class members' monthly payment obligations would be
15   sufficient to pay both the principal and interest owed on the loans. Defendants
16   breached this agreement and never applied any of Plaintiffs' and the Class members'
17   payments to principal.

18        165.   The written payment schedules prepared by Defendants, and applicable
19   to Plaintiffs' and Class members' loans, show that the payment amounts owed by
20   Plaintiffs and Class members to Defendants in year one are exactly equal to the
21   amount required to pay off the loan if, indeed, the interest actually charged on the
22   loan was the low interest rate promised. If the Defendants did as promised, the
23   payments would have been sufficient to pay both principal and interest amounts.

24        166.   Instead, Defendants immediately raised Plaintiffs' and Class members'
25   interest rates and applied *no part* of Plaintiffs' and Class members' payments were
26   applied to the principal balances on their loans. In fact, because Defendants charged
27   more interest than was agreed to and payments, as disclosed by Defendants, were, at
28   all times relevant, insufficient to cover the interest charge and thus principal balances

-42-

1    increased (which is the negative amortization built into the loan).

2    167.  Defendants breached the written contractual agreement by failing to
3    apply any portion of Plaintiffs' and the Class members' monthly payments towards
4    their principal loan balances.

5    168.  Plaintiffs and the Class members, on the other hand, did all of those
6    things the contract required of them.  Plaintiffs and the Class members made monthly
7    payments in the amount required by the terms of the Note and reflected in the
8    payment schedule prepared by Defendants.

9    169.  As a result of Defendants' breach of the agreement, Plaintiffs and the
10   Class members have suffered harm.  Plaintiffs and Class members have incurred
11   additional charges to their principal loan balance.  Plaintiffs and Class members have
12   incurred and will continue to incur additional interest charges on the principal loan
13   balance and surplus interest added to Plaintiffs' and Class members' principal loan
14   balance.  Furthermore, Defendants' breach has placed Plaintiffs and Class members in
15   danger of losing their homes through foreclosure, as Defendants have caused
16   Plaintiffs' and Class members' principal loan balances to increase and limited these
17   consumers' ability to make their future house payments or obtain alternative home
18   loan financing.

19   170.  At all times relevant, there existed a gross inequality of bargaining power
20   between the parties to the ARM loan contracts.  At all times relevant, Defendants
21   unreasonably and unconscionably exploited their superior bargaining position and
22   foisted upon Plaintiffs and the Class members extremely harsh, one-sided provisions
23   in the contract, which Plaintiffs and Class members were not made aware of and did
24   not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously
25   disclose as alleged herein), and which attempt to severely limit Defendants'
26   obligations under the contracts at the expense of Plaintiffs and Class members, as
27   alleged herein.  As a result of these extremely harsh, one-sided provisions, including
28   but not limited to the provisions which seek to limit the "teaser" interest rate for one

1  month or less, these provisions are unconscionable and therefore unenforceable.

2       171.  WHEREFORE, Plaintiffs and members of the Classes are entitled to

3  declaratory relief, compensatory damages proximately caused by Defendants' breach

4  of contract as alleged herein, pre-judgment interest, costs of suit and other relief as

5  the Court deems just and proper.

6

7  

**XI.**

8  

**FIFTH CAUSE OF ACTION**

9  

**Tortuous Breach of Implied Covenant of Good Faith and Fair Dealing**

10  

**(Against All Defendants)**

11       172.  Plaintiffs incorporate all preceding paragraphs as though fully set forth

12  herein.

13       173.  Defendants entered into written agreements with Plaintiffs and Class

14  members based on representations Defendants made directly and indirectly to

15  Plaintiffs and the Class members about the terms of their loans.

16       174.  Defendants expressly represented to Plaintiffs and the Class members

17  that they would provide loans secured by Plaintiffs' and Class members' homes, and

18  that the loans would have a fixed interest rate at promised low interest rate for a

19  period of three (3) to five (5) years.

20       175.  Defendants also represented that if Plaintiffs and the Class members

21  made the monthly payments in the amount prescribed by Defendants that no negative

22  amortization would occur.  The Note expressly states and/or implies that Plaintiffs'

23  and Class members' monthly payment obligation *will* be applied to pay both principal

24  and interest owed on the loan.  The Note further states that for each monthly payment

25  Plaintiffs and the Class members interest shall be paid before principal.

26       176.  The written payment schedules prepared by Defendants, and applicable

27  to Plaintiffs' and Class members' loans, show that the payment amounts owed by

28  Plaintiffs and Class members to Defendants in year one are exactly equal to the

-44-

1   amount required to pay off the loan if, indeed, the interest actually charged on the

2   loan was the low interest rate promised. If the Defendants acted as it promised, the

3   payments would have been sufficient to pay both principal and interest.

4          177.   Instead, Defendants immediately raised Plaintiffs' and Class members'

5   interest rate and applied *no part* of Plaintiff's and Class members' payment to

6   principal. In fact, because Defendants charged more interest than was disclosed and

7   agreed to in the loans, Plaintiffs' and the Class members' payments were insufficient

8   to cover the interest that Defendants charged resulting in an increase in the amount of

9   principal Plaintiffs and the Class members owed on their homes.

10         178.   Defendants unfairly interfered with Plaintiffs' and Class members' rights

11  to receive the benefits of the contract. These loans will cost Plaintiffs and Class

12  members thousands of dollars more than represented by Defendants. Plaintiffs and

13  Class members did not receive the fixed low interest rate home loan promised them

14  by Defendants. Defendants have caused Plaintiffs and Class members to lose equity

15  in their homes and therefore have denied Plaintiffs and Class members the enjoyment,

16  security of one of their most important investments.

17         179.   Plaintiffs and Class members, on the other hand, did all of those things

18  the contract required of them. Plaintiffs and Class members made monthly payments

19  in the amount required by the terms of the Note and reflected in the payment schedule

20  prepared by Defendants.

21         180.   At all times relevant, Defendants unreasonably denied Plaintiffs and

22  members of the Class the benefits promised to them under the terms of the Note,

23  including but not limited to a low interest rate for the first three (3) to five (5) years of

24  the loan, and clear and conspicuous disclosure of a payment amount sufficient to pay

25  both principle and interest so as to avoid negative amortization and the other failures

26  to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et

27  seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve

28  Board as alleged herein.

181.    Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

182.    Defendants' breaches, as alleged herein were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

183.    Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

184.    Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

185.    At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

186.    As a result of Defendants' conduct, Plaintiffs and Class members have suffered harm.  Plaintiffs and the Class members have incurred additional charges to their principal loan balance.  Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan balance.  Furthermore,

-46-

Defendants' breach has caused and/or otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members' principal loan balances to increase limiting these consumers' ability to make their future house payments or obtain alternative home loan financing.

187.    WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court deems just and proper.

## XII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all Class members pray for judgment against each Defendant, jointly and severally, as follows:

A.    An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    For actual damages according to proof;

C.    For compensatory damages as permitted by law;

D.    For consequential damages as permitted by law;

E.    For statutory damages as permitted by law;

F.    For punitive damages as permitted by law;

G.    For rescission;

H.    For equitable relief, including restitution;

I.    For restitutionary disgorgement of all profits Defendants obtained as a result of their unfair competition;

J.    For interest as permitted by law;

K.    For Declaratory Relief;

1    L.    For a mandatory injunction requiring Defendants to permanently include
2          in every Option ARM loan and disclosure statement: (I) clear and
3          conspicuous disclosure of the actual interest rate on the Note(s) and
4          disclosure statement(s) as required under 12 C.F.R. § 226.17 by; (ii)
5          clear and conspicuous disclosure in the Note(s) and the disclosure
6          statement(s) that payments on the variable interest rate loan during the
7          initial period at the teaser rate will result in negative amortization and
8          that the principal balance will increase as required under 12 C.F.R. §
9          226.19; and (iii) clear and conspicuous disclosure that the initial interest
10         rate provided is discounted and does not reflect the actual interest that
11         Plaintiffs and Class members would be paying on the Note(s).
12   M.    For reasonable attorneys' fees and costs; and
13   N.    For such other relief as is just and proper.

14

15   **DEMAND FOR JURY TRIAL**

16         Plaintiffs hereby respectfully demand a jury trial.

17

18                                          KIESEL BOUCHER LARSON LLP

19   DATED: June 16, 2008

20                                          By: _Elaine Mandel for_
21                                          PAUL R. KIESEL, ESQ.
                                            PATRICK DeBLASE, ESQ.
22                                          MICHAEL C. EYERLY, ESQ.
                                            8648 Wilshire Boulevard
23                                          Beverly Hills, California 90210

24                                          JEFFREY K. BERNS, ESQ.
                                            **ARBOGAST & BERNS LLP**
25                                          19510 Ventura Blvd, Ste 200
                                            Tarzana, California 91356

26                                          Attorneys for Plaintiffs and Class Members

27

28

# EXHIBIT 1



And I

# ADJUSTABLE RATE NOTE
### (12 MAT Payment and Rate Caps)

MIN: 1001968-0002107576-2

Loan # 2107576

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

FEBRUARY 1, 2006                IRVINE                        ,CALIFORNIA
[Date]                          [City]                        [State]

14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 250,000.00            (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

#### (A) Interest Rate

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of            1.250 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

#### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of APRIL 1              , 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

#### (C) Interest Rate Limit

My interest rate will never be greater than            9.950 %.

#### (D) Index

Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE 12 MAT ADJUSTABLE RATE NOTE

Initials: _____ _____ _____

Form 3003

8480185 (0508)                VMP Mortgage Solutions, Inc. (800)521-7291                8/05

 

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 500/1000                                    percentage point(s) (        3.500 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3.    **PAYMENTS**

    **(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on APRIL 1 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MARCH 1, 2036                  , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

                                  or at a different place if required by the Note Holder.

    **(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 833.13                  . This amount may change.

    **(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the        1st          day of APRIL          ,        2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

    **(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

    **(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

    **(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000        percent (        110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.



**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of   1 5
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
        5 . 0 0 0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.




## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
CLARENCE E. BOSCHMA          -Borrower        SHIRLEY C. BOSCHMA          -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                    -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:
WITHOUT RECOURSE

HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

BY: _____

ITS:

 

# ADDENDUM TO ADJUSTABLE RATE NOTE
## (Prepayment)

Loan #:2107576

THIS ADDENDUM is made this    1st    day of FEBRUARY 2006            , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum. A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment." A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge. If within the first    THREE            (    3    ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____(Seal)          _____(Seal)
CLARENCE E. BOSCHMA            -Borrower          SHIRLEY C. BOSCHMA            -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                         -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                         -Borrower

_____(Seal)          _____(Seal)
                               -Borrower                                         -Borrower

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (05/05)                    VMP Mortgage Solutions, Inc. (800)521-7291                    SPD #002
                                                                                                (05/05)

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND

Loan Number: 2107576                                                          Date: FEBRUARY 1, 2006
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s): CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA

Address: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 7.189 % | $403,945.90 | $246,805.35 | $650,751.25 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 833.13 | 04/01/06 | | | | | | |
| 11 | 833.13 | 05/01/06 | | | | | | |
| 12 | 895.61 | 04/01/07 | | | | | | |
| 12 | 962.78 | 04/01/08 | | | | | | |
| 5 | 1,034.99 | 04/01/09 | | | | | | |
| 318 | 1,922.49 | 09/01/09 | | | | | | |
| 1 | 1,926.24 | 03/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability __X__ Property Insurance _____ Flood Insurance _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
_____ The goods or property being purchased __X__ Real property you already own.
FILING FEES: $
LATE CHARGE: If payment is more than _____15_____ days late, you will be charged _____5.000_____ % of the payment. * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
__X__ may          __X__ will not   have to pay a penalty.
_____ may          __X__ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may   __X__ may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate          all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant CLARENCE E. BOSCHMA | Date | Applicant SHIRLEY C. BOSCHMA | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT                    DocMagic eForms 800-649-1362
                                                                  www.docmagic.com

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA          ) ss:

3

COUNTY OF LOS ANGELES )

4

    I am employed in the City and County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action. My business address is 8648 Wilshire Boulevard, Beverly Hills, California 90211-2910.

5

6

    On June 16, 2008, I served the foregoing document(s) described as: **SECOND AMENDED CLASS ACTION COMPLAINT** on the interested parties by placing    ( ) the original ( X ) a true and correct copy thereof in a sealed envelope addressed as follows:

7

8

**PLEASE SEE ATTACHED MAILING LIST**

9

   [ x ]   VIA OVERNIGHT MAIL:

10

    VIA : By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

11

12

   [ ]   VIA U.S. MAIL:

13

    I am readily familiar with the firm's practice for collection and processing of correspondence for mailing.  Under that practice such envelope(s) would be deposited with the U.S. postal service with postage thereon fully prepaid, at Beverly Hills, California.

14

15

   [ ]   VIA PERSONAL DELIVERY:

16

    I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP § 1011.

17

   [ ]   VIA FACSIMILE:

18

    The interested parties receiving the above-referenced document via facsimile have agreed to accept same via facsimile transmission, and the facsimile transmission report indicated that the transmission was complete and without error.  A copy of that report, which was properly issued by the transmitting machine, is attached hereto.

19

20

   [ ]   STATE:

21

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

   [ X ]   FEDERAL:

23

    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

24

25

    I declare under penalty of perjury under the laws of the state of California that the above is true and correct and was executed on June 16, 2008, at Beverly Hills, California.

26

27

28

Julissa E. Salgueiro

1
2          <u>Boschma, et al. v. Home Loan Center, et al.</u>
           United States District Court, Central District of California;
3                    Case Number SACV 07-613 AG (JTLx)

4
5     Jeffrey K. Berns, Esq.
      jberns@jeffbernslaw.com
6     ARBOGAST & BERNS LLP
      19510 Ventura Boulevard, Suite 200
      Tarzana, California 91356
7     Telephone: 818/961.2000
      Facsimile: 818/867.4820
8     **Attorneys for Plaintiffs**

9     Robert S. Beall, Esq.
      Rbeall@sheppardmullin.com
10    SHEPPARD MULLIN, RICHTER &
      HAMPTON
11    650 Town Center Drive
      Fourth Floor
12    Costa Mesa, California 92626
      Telephone: 714/513.5100
13    Facsimile: 714/513.5130
      **Attorneys for Defendants, HOME**
14    **LOAN CENTER, INC. dba**
      **LENDINGTREE LOANS, a**
15    **California Corporation**

16
17
18
19
20
21
22
23
24
25
26
27
28