1  Paul R. Kiesel, Esq. (SBN 119854)
   kiesel@kbla.com
2  Patrick DeBlase, Esq. (SBN 167138)
   deblase@kbla.com
3  Michael C. Eyerly, Esq. (SBN 178693)
   eyerly@kbla.com
4  KIESEL BOUCHER LARSON LLP
   8648 Wilshire Boulevard
5  Beverly Hills, California 90211
   Telephone: 310/854.4444
6  Facsimile: 310/854.0812

7  Jeffrey K. Berns, Esq. (SBN 131351)
   jberns@jeffbernslaw.com
8  LAW OFFICES OF JEFFREY K. BERNS
   19510 Ventura Boulevard, Suite 200
9  Tarzana, California 91356
   Telephone: 818/961.2000
10 Facsimile: 818/867.4820

11 Attorneys for Plaintiffs,
   on behalf of themselves and all others similarly situated
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16 CLARENCE E. BOSCHMA,          )  CASE NO: SACV07-613 AG (JTLx)
   SHIRLEY C. BOSCHMA, and       )
17 SHARON ROBISON on behalf of   )  THIRD AMENDED CLASS ACTION
   themselves and others similarly )  COMPLAINT FOR:
18 situated,                      )
                                  )  (1)  Violations of the Truth in Lending
19         Plaintiffs,            )       Act, 15 U.S.C. § 1601, et seq.
                                  )
20 v.                             )  (2)  Violation of CA Bus. & Prof. Code
                                  )       §17200, et seq. - "Unlawful"
21 HOME LOAN CENTER, INC., dba    )       Business Practices (TILA)
   LENDINGTREE LOANS; and DOES    )
22 1 through 200, inclusive,      )  (3)  Fraudulent Omissions;
                                  )
23         Defendants.            )  (4)  Violation of Bus. & Prof. Code
                                  )       §17200, et seq. – "Unfair" and
24                                )       "Fraudulent" Business Practices
                                  )
25 _____ )  (5)  Breach of Contract; and
                                     
26                                   (6)  Tortuous Breach of the Covenant of
                                          Good Faith and Fair Dealing
27
                                     **JURY TRIAL DEMANDED**
28

-1-

1    Plaintiffs, CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA and

2    SHARON ROBISON ("Plaintiffs"), individually and on behalf of all others similarly

3    situated, allege as follows:

## I.

## INTRODUCTION

6    1.    This is an action brought pursuant to the Truth in Lending Act ("TILA"),

7    15 U.S.C. §§1601, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. &

8    Prof. Code §§ 17200, *et seq.*, and other statutory and common law in effect. Plaintiffs

9    CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA and SHARON ROBISON

10   individually, and on behalf of all others similarly situated, bring this action against

11   HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, and DOES 1-200

12   (collectively "Defendants"), based, in part, on Defendants' failure to clearly and

13   conspicuously disclose to Plaintiffs and the Class Members, in Defendants' Option

14   Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure

15   statements, accompanying the loans (i) the actual interest rate on the note(s) (12

16   C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in

17   negative amortization and that the principal balance will increase (12 C.F.R. §

18   226.19); and (iii) that the initial interest rate provided was discounted and does not

19   reflect the actual interest that Plaintiffs and Class members would be paying on the

20   Note(s).

## II.

## THE PARTIES

24   2.    Plaintiffs, CLARENCE E. BOSCHMA and SHIRLEY C. BOSCHMA,

25   are and at all times relevant to this Complaint were, individuals residing in Whittier,

26   California. On or about February 1, 2006, Plaintiffs refinanced their existing home

27   loan and entered into an Option ARM loan agreement with Defendants. The Option

28   ARM loan was secured by Plaintiffs' primary residence. Attached hereto as Exhibit 1

1 is a true and correct copy of the Note and Truth and Lending Disclosure Statement
2 ("TILDS") pertinent to this action.

3    3.    Plaintiff, SHARON ROBISON, is and at all times relevant to this
4 Complaint was, an individual residing in Visalia, California. On or about November
5 22, 2005, Plaintiff refinanced her existing home loan and entered into an Option
6 ARM loan agreement with Defendants. The Option ARM loan was secured by
7 Plaintiff's primary residence. Attached hereto as Exhibit 2 is a true and correct copy
8 of the Note and Truth and Lending Disclosure Statement ("TILDS") pertinent to this
9 action.

10    4.    Defendant HOME LOAN CENTER, INC., dba LENDINGTREE
11 LOANS is, and at all material times relevant to this Complaint was, qualified to do
12 business in California. Defendant is a corporation or other business entities, form
13 unknown, doing business in this judicial district. At all relevant times hereto HOME
14 LOAN CENTER, INC., dba LENDINGTREE LOANS was and is engaged in the
15 business of promoting, marketing, distributing and selling the Option Arm loans that
16 are the subject of this Complaint. HOME LOAN CENTER, INC., dba
17 LENDINGTREE LOANS transacts business in Los Angeles County, California and
18 at all relevant times promoted, marketed, distributed, and sold Option Arm loans
19 throughout the United States, including Los Angeles County, California. HOME
20 LOAN CENTER, INC., dba LENDINGTREE LOANS has significant contacts with
21 Los Angeles County, California, and the activities complained of herein occurred, in
22 whole or in part, in Los Angeles, California.

23    5.    Defendant HOME LOAN CENTER, INC., dba LENDINGTREE
24 LOANS and DOES 1 through 200 shall hereinafter be referred to collectively as
25 "Defendants."

26    6.    At all times mentioned herein, Defendants, and each of them, were
27 engaged in the business of promoting, marketing, distributing, purchasing, and/or
28 selling the Option ARM loans that are the subject of this Complaint, throughout the

THIRD AMENDED CLASS ACTION COMPLAINT

1   United States, including Los Angeles County, California.

2       7.    Plaintiffs are informed, believe, and thereon allege, that each and all of

3   the aforementioned Defendants are responsible in some manner, either by act or

4   omission, strict liability, fraud, deceit, fraudulent concealment, negligence,

5   respondeat superior, breach of contract or otherwise, for the occurrences herein

6   alleged, and that Plaintiffs' injuries, as herein alleged, were proximately caused by the

7   conduct of Defendants.

8       8.    Plaintiffs are informed, believe, and thereon allege, that at all times

9   material hereto and mentioned herein, each of the Defendants (both named and DOE

10  defendants) sued herein were the agent, servant, employer, joint venturer, partner,

11  division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining

12  Defendants and were at all times acting within the purpose and scope of such agency,

13  servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego,

14  partnership or employment and with the authority, consent, approval and ratification

15  of each remaining Defendant.

16      9.    At all times herein mentioned, each Defendant was the co-conspirator,

17  agent, servant, employee, assignee and/or joint venturer of each of the other

18  Defendants and was acting within the course and scope of said conspiracy, agency,

19  employment, assignment and/or joint venture and with the permission and consent of

20  each of the other Defendants.

21      10.   Plaintiffs are informed, believe, and thereon allege, that Defendants, and

22  each of them, are, and at all material times relevant to this Complaint, performed the

23  acts alleged herein and/or otherwise conducted business in California. Defendants,

24  and each of them, are corporations or other business entities, form unknown, have,

25  and are doing business in this judicial district.

26      11.   Plaintiffs are informed, believe, and thereon allege, that DOES 1 through

27  100, inclusive, are securitized trusts, equity funds, collateralized debt obligations

28  (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as

1  additional lenders, loan originators, servicers and/or are assignees to the loans which
2  are the subject of this action. Plaintiffs will seek leave of Court to replace the
3  fictitious names of these entities with their true names when they are discovered by
4  Plaintiffs herein.

5      12.    The true names and capacities, whether individual, corporate, associate
6  or otherwise, of Defendants DOES 1 through 200, inclusive, and each of them, are
7  unknown to Plaintiffs at this time, and Plaintiffs therefore sue said Defendants by
8  such fictitious names. Plaintiffs allege, on information and belief, that each Doe
9  defendant is responsible for the actions herein alleged. Plaintiffs will seek leave of
10 Court to amend this Complaint when the names of said Doe defendants have been
11 ascertained.

12      13.    Plaintiffs are informed, believe, and thereon allege, that at all times
13 relevant during the liability period, that Defendants, and each of them, including
14 without limitation those Defendants herein sued as DOES, were acting in concert or
15 participation with each other, or were joint participants and collaborators in the acts
16 complained of, and were the agents or employees of the others in doing the acts
17 complained of herein, each and all of them acting within the course and scope of said
18 agency and/or employment by the others, each and all of them acting in concert one
19 with the other and all together.

20
21                          **III.**
22                **JURISDICTION AND VENUE**

23      14.    This Court has subject matter jurisdiction pursuant to 15 U.S.C §§ 1601
24 *et seq.* and 28 U.S.C. § 1331.

25      15.    This Court has personal jurisdiction over the parties in this action by the
26 fact that Defendants are either individuals who reside in this District within California
27 or are corporations duly licenced to do business in California.

28      16.    Venue is proper within this District and Division pursuant to 28 U.S.C. §

1  1391 (b) because a substantial part of the events and omissions giving rise to the

2  claims occurred in this district, and because there is personal jurisdiction in this

3  district over the named Defendants because they regularly conduct business in this

4  judicial district.

5

6                                    **IV.**

7              **FACTS COMMON TO ALL CAUSES OF ACTION**

8         17.    Defendants sold a variety of home loans.  The Option ARM or adjustable

9  rate mortgages are the loans sold by Defendants which are the subject of this

10 Complaint.

11        18.    The instant action arises out of residential mortgage loan transactions in

12 which Defendants failed to disclose pertinent information in a clear and conspicuous

13 manner to Plaintiffs and the Class members, in writing, as required by law.

14        19.    This action also concerns Defendants' unlawful, fraudulent and unfair

15 business acts or practices. Defendants engaged in a campaign of deceptive conduct

16 and concealment aimed at maximizing the number of consumers who would accept

17 this type of loan in order to maximize Defendants' profits, even as Defendants knew

18 their conduct would cause many of these consumers to lose their homes through

19 foreclosure.

20        20.    Plaintiffs, along with thousands of other similarly situated consumers,

21 were sold Option ARM home loan by Defendants.  The Option ARM loan sold to

22 Plaintiffs and the Class is a deceptively devised financial product. The loan has a

23 variable rate feature with payment caps.  The product was sold based on the promise

24 of a low, fixed interest rate, when in fact Plaintiffs and the Class members were

25 charged a different, much greater interest rate than promised. Further, Defendants

26 disguised from Plaintiffs the Class members the fact that Defendants' Option ARM

27 loan product was designed to, and did, cause negative amortization to occur. Further

28 still, once lured into these loans, consumers cannot easily extricate themselves from

1  these loans because Defendants included a stiff and onerous prepayment penalty

2  provision making it extremely difficult for Plaintiffs and the Class members to

3  extricate themselves from the loans.

4      21.    The Option ARM loans Defendant HOME LOAN CENTER, INC., dba

5  LENDINGTREE LOANS sold to Plaintiffs and the Class members violates the Truth

6  in Lending Act ("TILA"). TILA is supposed to protect consumers; it mandates certain

7  disclosures be made by lenders to borrowers concerning the terms and conditions of

8  their home loans. Defendants failed to make these disclosures in connection with the

9  Option ARM loans sold to Plaintiffs and the Class.

10     22.    At all times relevant, Defendants promoted their Option ARM loan

11 product to consumers, including Plaintiffs, in a false or deceptive manner. Defendants

12 promoted to the general public a loan which would provide a very low, fixed interest

13 rate for a period of three (3) to five (5) years and with no negative amortization.

14 Defendants used this "teaser" rate to lure Plaintiffs into purchasing Defendants'

15 Option ARM loan product.  However, the low fixed rate was illusory, a false promise.

16 Plaintiffs and others similarly situated did not receive the benefit of the low rate

17 promised to them.  Once signed on to Defendants' loan, the interest rate applied to

18 Plaintiffs' and Class members' loans was immediately and significantly increased.

19     23.    Plaintiffs and others similarly situated were consumers who applied for a

20 mortgage loan through Defendants. During the loan application process, in each case,

21 Defendants promoted, advertised, and informed Plaintiffs and the Class members that

22 in accepting these loan terms, Plaintiffs would be able to lower their mortgage

23 payment and save money.  Defendants initiated this scheme in order to maximize the

24 amount of the loans issued to consumers and to maximize Defendants' profits.

25     24.    Based on the Defendants' representations, and the conduct alleged

26 herein, Plaintiffs and Class members agreed to finance their primary residence

27 through Defendants' Option ARM loan. Plaintiffs and Class members were told they

28 were being sold a home loan with a low interest rate of between 1 % and 3% (the

1    "teaser" rate), and that the interest rate was fixed for the first three (3) to five (5) years

2    of the loan. Defendants also informed Plaintiffs, and Plaintiffs were lead to believe,

3    that if they made payments based on the promised low interest rate, which were the

4    payments reflected in the written payment schedule provided to them by Defendants,

5    the loan was a no negative amortization home loan. Plaintiffs' payments were to be

6    applied to their principal loan balances as well as to interest.

7        25.    After, the purported three (3) to five (5) year fixed interest period,

8    Plaintiffs and the Class members reasonably believed, based on the representations

9    contained in the documents Defendants provided to Plaintiffs and the Class members,

10   that they would be able to refinance their loans and get new loans before their

11   scheduled payments increased. However, the payment schedule provided by

12   Defendants failed to disclose, and by omission failed to inform, these consumers that

13   due to the negative amortization that was purposefully built into these loans,

14   Plaintiffs and the Class members would be unable to refinance their homes as there

15   would be little or no equity left to refinance.

16       26.    Plaintiffs believed these facts to be true because that is what the

17   Defendants wanted consumers to believe. Defendants aggressively marketed their

18   product as a fixed, low interest home loan. Defendants knew that if marketed in such

19   a manner, their Option ARM loan product would be a hugely popular and profitable

20   product for them. Defendants also knew, however, that they were marketing their

21   product in a false and deceptive manner. While Defendants trumpeted their low,

22   fixed rate loans to the public, Defendants knew their promise of low, fixed interest

23   was illusory.

24       27.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment*

25   but not a low, fixed interest rate. Unbeknownst to Plaintiffs and Class members, the

26   actual interest rate they were charged on their loans was not fixed, was not the low

27   teaser interest rate stated in the loan documentation and was, in fact, considerably

28   higher than going market rates. And, after purchasing Defendants' Option ARM loan

1  product, Plaintiffs and Class members did not actually receive the benefit of the low,
2  teaser rate at all, or in some cases for only a single month. Immediately, thereafter,
3  Defendants in every instance and for every loan, increased the interest rate they
4  charged consumers. The now-increased interest charges incurred by Plaintiffs and
5  Class members over and above the fixed interest payment rate were added to the
6  principal balance on their home loans in ever increasing increments, substantially
7  reducing the equity in these borrowers' homes.

8      28.   In stark contrast to this reality, Defendants, through the standardized
9  loan contracts they created and supplied to Plaintiffs and the Class, stated that
10  negative amortization was only a possibility and would occur only if the
11  payments were not sufficient. Defendants concealed and failed to disclose the fact
12  that the loan as presented and designed, in fact, *guaranteed* negative amortization.
13  Defendants failed to disclose and omitted the objectively material fact that negative
14  amortization would occur even if the consumer followed the payment schedule set
15  forth by Defendants in the loan documents. This information was objectively material
16  and necessary for consumers to make an informed decision because this would have
17  revealed that the loan's principal balance would increase if the payment schedule was
18  followed, thereby rendering it impossible to refinance the loan at or around the time
19  the prepayment penalty expired and/or by the time the interest and payment rates
20  reset. In this respect, Defendants utterly failed to place any warning on the Truth in
21  Lending Disclosure Statement about negative amortization.

22      29.   At all times relevant, once Plaintiffs and the Class members accepted
23  Defendant's Option ARM loan contract, they had no viable option by which to
24  extricate themselves from these loan because a substantial majority of these Option
25  ARM loan agreements included a draconian pre-payment penalty for a period of up to
26  three years.

27      30.   The Option ARM loans sold by Defendants all have the following
28  uniform characteristics:

(a)    There is an initial low interest rate or "teaser" rate that was used to entice the Plaintiffs to enter into the loan. The rate offered was typically 1%-3%;

(b)    The loan has with it a corresponding low payment schedule. The marketing of the loan with the above teaser was intended to misleadingly portray to consumers that the low payments for the first three (3) to five (5) years were a direct result of the low interest rate being offered;

(c)    The initial payments in the required disclosures were equal to the low interest rate being offered. The purpose was to assure that if someone were to calculate what the payment would be at the low offered interest rate, it corresponded to the payment schedule. This portrayal was intended to further mislead consumers into believing that the payments were enough to cover all principal and interest;

(d)    The payment has a capped annual increase on the payment amount; and

(e)    And for a substantial number of the loans, the loans included a prepayment penalty preventing consumers from securing a new loan for a period of up to three (3) years.

31.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty (30) days. Thereafter, the true interest charged on the loans was significantly higher than the promised rate.

32.    Defendants uniformly failed to disclose and by omission failed to inform consumers, including Plaintiffs and the Class members, that the payments set forth in Defendant's schedule of payments were insufficient to cover the actual charges and

1  that this was, in fact, a loan that would cause the Plaintiffs and the Class members to

2  lose the equity they have in their homes.

3      33.  Defendants uniformly failed to disclose and by omission failed to inform

4  consumers, including Plaintiffs and the Class members, that when the principal

5  balance increased to a certain level, they would no longer have the option of making

6  the fixed interest payment amount.

7      34.  Disclosing whether a payment will result in negative amortization is of

8  critical importance to consumers. If the disclosed payment rate is insufficient to pay

9  both principle and interest, one of the consequences of negative amortization is a loss

10  of equity. Defendants, and each of them are and, at all times relevant hereto, have

11  been aware that clear and conspicuous disclosure of the actual interest rate and a

12  payment rate sufficient to avoid negative amortization and the concomitant loss of

13  equity is extremely important material information.

14      35.  At all times relevant, Defendants, and each of them, knew or should have

15  known, or were reckless in not knowing, that: (i) the payment rate provided to

16  Plaintiffs and the Class members was insufficient to pay both interest and principle;

17  (ii) that negative amortization was substantially certain to occur if Plaintiffs and the

18  Class members made payments according to the payment schedule provided by

19  Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class

20  members' residence was substantially certain to occur if Plaintiffs and the Class

21  members made payments according to the payment schedule provided by Defendant.

22      36.  In spite of its knowledge, Defendants sold their ARM loans as a product

23  that would provide Plaintiffs and the Class members with a low interest rate for the

24  first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose

25  and/or concealed by making partial representations of material facts when Defendants

26  had exclusive knowledge of material facts that negative amortization was certain to

27  occur. This concealed and omitted information was not known to Plaintiffs and the

28  Class members and which, at all times relevant, Defendants failed to disclose and/or

actively concealed by making such statements and partial, misleading representations

1  to Plaintiffs and all others similarly situated. Because the ARM loans did not provide

2  a low interest rate for the first three (3) to five (5) years of the Note and the payment

3  rate disclosed by Defendants was insufficient to pay both principle and interest,

4  negative amortization occurred.

5      37.    The true facts about Defendants ARM loans is that they do not provide

6  the low interest rate promised, and are certain to result in negative amortization.

7      38.    Disclosure of a payment rate that is sufficient to pay both principal and

8  interest on the loans is of critical importance to consumers. If the disclosed payment

9  rate is insufficient to pay both principle and interest, one of the consequences is that

10  negative amortization or loss of equity will occur. Defendants, and each of them are,

11  and at all times relevant hereto, have been aware that the ability of the disclosed

12  payment rate to pay both principal and interest so as to avoid negative amortization is

13  one of the most important terms of a loan.

14      39.    To this day, Defendants continue to conceal material information from

15  consumers. and the public, that: (i) the payment rate provided to Plaintiffs and the

16  Class members is and was insufficient to pay both principal and interest; (ii) if the

17  disclosed payment schedule is followed, Plaintiffs and the Class members will suffer

18  negative amortization; and (iii) loss of equity and/or possession of the property is

19  substantially certain to occur if the disclosed payment schedule is followed.

20  Nevertheless, Defendants have refused to clearly and conspicuously disclose to

21  Plaintiffs and the Class members the existence of this important material information

22  and the injury caused thereby, including but not limited to the loss of equity.

23      40.    In the end, the harm caused by Defendants' failures to disclose and

24  omissions grossly outweighs any benefit that could be attributed to them.

25      41.    Knowing the truth and motivated by profit and market share, Defendants

26  have knowingly and willfully engaged in the acts and/or omissions to mislead and/or

27  deceive Plaintiffs and others similarly situated.

28      42.    The ARM loans have resulted and will continue to result in significant

-12-

1  loss and damage to Plaintiffs and the Class Members, including but not limited to the

2  loss of equity these consumers have or had in their homes.

3      43.    The facts which Defendants misrepresented and concealed, as alleged in

4  the preceding paragraphs, were material to the decisions about whether to purchase

5  the ARM loans in that Plaintiffs and others similarly situated would not have

6  purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or

7  deceptive acts and/or practice as alleged herein.

8      44.    Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or

9  deceptive scheme to induce consumers to purchase their ARM loans.

10      45.    Defendants' unlawful, unfair, fraudulent, untrue and/or deceptive acts

11  and/or practices were committed with willful and wanton disregard for whether or not

12  Plaintiffs or others similarly situated would, in fact, receive a home loan that would

13  actually provide the low interest and payment rate, as promised, for the first three (3)

14  to five (5) years of the loan that is sufficient to pay both principal and interest.

15      46.    Upon information and belief and at all times relevant, Defendants

16  possessed full knowledge and information concerning the above facts about the ARM

17  loans, and otherwise sold these ARM loans throughout the United States, including

18  the State of California.

19  **V.**

20  **CLASS ACTION ALLEGATIONS**

21      47.    Plaintiffs bring this action on behalf of themselves, and on behalf of all

22  others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure,

23  Rules 23(a), and 23(b), and the case law thereunder. The classes Plaintiffs seek to

24  represent are defined as follows:

25

26      **The California Class**: All individuals who, within the four year period

27      preceding the filing of Plaintiffs' Complaint through the date notice is

28      mailed to the Class, received an Option ARM loan through Defendant

-13-

1  HOME LOAN CENTER, INC., dba LENDINGTREE LOANS on their
2  primary residences located in the State of California. Excluded from the
3  California Class are Defendants' employees, officers, directors, agents,
4  representatives, and their family members; and

6  **The National Class**: All individuals in the United States of America
7  who, within the four year period preceding the filing of Plaintiffs'
8  Complaint through the date notice is mailed to the Class, received an
9  Option ARM loan through Defendant HOME LOAN CENTER, INC.,
10  dba LENDINGTREE LOANS on their primary residences located in the
11  United States of America. Excluded from the National Class are
12  Defendants' employees, officers, directors, agents, representatives, and
13  their family members.

15  An appropriate sub-Class exists for the following Class Members:

17  All individuals in the United States of America who, within the three
18  year period preceding the filing of Plaintiffs' Complaint through the date
19  notice is mailed to the Class, received an Option ARM loan through
20  Defendant HOME LOAN CENTER, INC., dba LENDINGTREE
21  LOANS on their primary residences located in the United States of
22  America. Excluded from the National sub-Class are Defendants'
23  employees, officers, directors, agents, representatives, and their family
24  members.

25  Plaintiffs reserve the right to amend or otherwise alter the Class definitions
26  presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in
27  response to facts learned through discovery, legal arguments advanced by Defendants
28  or otherwise.

C:\Documents and Settings\Administrator\Local Settings\Temp\XPgrpwise\740625-1.wpd

48.  <u>Numerosity</u>: The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. While the exact number of Class members is unknown at this time, Plaintiffs are informed and believe that the entire Class or Classes consist of thousands of members.

49.  <u>Commonality</u>: Common questions of law or fact are shared by the Class members. This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues. Such common questions include, but are not limited to, the following:

(a)  Whether Defendants' acts and practices violate the Truth in Lending Act;

(b)  Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(c)  Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(d)  Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiffs and the Class members before and during the loan application process;

(e)  Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiffs and the Class members;

(f)  Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(g)  Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(h)  Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of

-15-

1     the loans;

2     (i)   Whether Defendants' failure to apply Plaintiffs' and the Class

3          members' payments to principal as promised in the form Notes

4          constitutes a breach of contract, including a breach of the covenant

5          of good faith and fair dealing;

6     (j)   Whether Defendants' conduct in immediately raising the interest

7          rate on consumers' loans so that no payments were made to the

8          principal balance constitutes breach of the covenant of good faith

9          and fair dealing;

10     (k)   Whether the doctrine of equitable tolling applies to extend

11          applicable statutes of limitations;

12     (l)   Whether the terms and conditions of Defendants' Option ARM

13          home loan are unconscionable;

14     (m)   Whether Plaintiffs and the Class are entitled to damages;

15     (n)   Whether Plaintiffs and the Class members are entitled to punitive

16          damages; and

17     (o)   Whether Plaintiffs and the Class members are entitled to

18          rescission.

19     50.    Typicality: Plaintiffs' claims are typical of the claims of the Class

20 Plaintiffs and the other Class members were subjected to the same kind of unlawful

21 conduct and the claims of Plaintiffs and the other Class members are based on the

22 same legal theories.

23     51.    Adequacy: Plaintiffs are adequate representative of the Class because

24 their interests do not conflict with the interests of the other members of the Class

25 Plaintiffs seek to represent. Plaintiffs have retained counsel competent and

26 experienced in complex class action litigation and Plaintiffs intend on prosecuting

27 this action vigorously. The interests of members of the Class will be fairly and

28 adequately protected by Plaintiffs and their counsel.

52.    <u>Ascertainable Class</u>: The proposed Classes are ascertainable in that the members can be identified and located using information contained in Defendants' mortgage lending records.

53.    This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3).

(a)    <u>Risk of Inconsistent Judgments</u>: The unlawful acts and practices of Defendants, as alleged herein, constitute a course of conduct common to Plaintiffs and each Class member.  Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of individual Class members to protect their interests;

(b)    <u>Injunctive and/or Declaratory Relief to the Class is Appropriate</u>: Defendants, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

(c)    <u>Predominant Questions of Law or Fact</u>: Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.  Further, an important public interest will be served by addressing the matter as a class action. The cost to the court system of adjudicating each such individual lawsuit would be

1    substantial.

## VI.

### FIRST CAUSE OF ACTION

**Violations of Truth in Lending Laws, 15 U.S.C. §1601, et seq.**

**(Plaintiff Sharon Robison, Only, and the Class As Against All Defendants)**

A.    <u>Defendants' Failure to Clearly and Conspicuously Disclose A Single APR Violates Truth in Lending Laws</u>

54.    15 U.S.C. § 1638(a)(4) requires lenders to disclose only one annual percentage rate ("APR") and not an additional APR that is only applicable for the first 30 days of a loan.

55.    The Federal Reserve Board's ("FRB") Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation."

56.    15 U.S.C. § 1638(a)(8) and 12 C.FR § 226.18(e) also require lenders to provide a descriptive explanation of the APR.

57.    12 C.F.R.§ 226.18 (e) defines" APR" as the cost of credit expressed as a yearly rate.

58.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require lenders to make disclosures concerning the APR in a clear and conspicuous manner and a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

59.    In addition, the FRB's Commentary § 226.17(a)(l)-1 provides that TILA's clear and conspicuous requirement applies to the disclosure and explanation of the cost of the loan as an APR, and where there is a contradiction between the TILDS and other information provided to the borrower, the disclosure is unclear.

60.    At all times relevant during the liability period, Defendants provided

-18-

1   Plaintiff Robison and the Class members with Notes that state, at ¶ 2 (A), "I will pay

2   interest at a *yearly rate* of 1.250%." However, in the TILDS, in the box entitled

3   "ANNUAL PERCENTAGE RATE" it describes the APR as "[t]he cost of your credit

4   as a *yearly rate"* and then lists an APR of "6.811%."

5        61.   At all times relevant during the liability period, Defendants violated §

6   226.17(a)(1)-1 by listing two completely different APRs in the loan documents.  In

7   particular, for Plaintiff Robison, the TILDS lists an APR of 6.811%.  However, the

8   Note lists an APR of "1.250%."  Thus, the "1.250%" APR stated in the Note

9   contradicts the "6.811%" APR Defendants stated in the TILDS.

10        62.   At all times relevant during the liability period, Defendants failed to

11   clearly and conspicuously explain in the Note or TILDS that the low APR (the same

12   APR upon which Defendants base the written payment schedule provided to

13   Plaintiff Robison) was only offered for the first thirty (30) days of the loan.

14        63.   At all times relevant during the liability period, Defendants also failed to

15   clearly, conspicuously and accurately disclose the APR that it charged Plaintiff

16   Robison and the Class members' on their loans. Defendants also failed to disclose,

17   and by omission, failed to inform Plaintiff Robison and the Class members that the

18   APR listed in the TILDS was not the APR used to determine the first three years of

19   payments listed in the very same TILDS; rather, Defendants listed payment amounts

20   for the first four plus years of the loan based on the APR listed in the Note which was

21   correct for *only* thirty days.

22        64.   At all times relevant during the liability period, Defendants created and

23   caused the contradiction in the loan documents by purposefully disclosing two

24   different APR's in the loan documents it provided to Plaintiff Robison and the Class

25   members.

26

27      **B.**    <u>**Defendants' Failure to Clearly and Conspicuously Disclose That the**</u>

28            <u>**Payment Schedules Are Not Based on the APR Stated in the TILDS**</u>

**Violates TILA**

65.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the annual interest rate and payments in a clear and conspicuous manner. Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.

66.    As for Plaintiff Robison's and the Class members' Option ARM loans, Defendants violated 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 in that they failed to clearly and conspicuously disclose the annual interest rate upon which the payments listed in the TILDS are based.

67.    The scheduled payment amounts and APR listed in the Note and TILDS for each of the subject loans are unclear and inconspicuous. In fact, the payment amounts for the first three to five years are not based on the APR listed in the TILDS but instead, are based upon an APR listed in the Note, which in fact existed for only thirty (30) days.

68.    At all times relevant, Defendants knowingly and intentionally included in each of the TILDS a schedule of payments that was not based upon the interest rate listed in these same documents. Defendants' failure to clearly and conspicuously disclose the payment amounts due based on the listed APR was, and is, deceptive.

69.    Further, in addition to Defendants' failure to disclose in the Note and the TILDS that the payments listed were not based upon the APR listed, Defendants knowingly and intentionally expressly and/or impliedly represented in the loan documents that the payments would be applied to both principal and interest. However, in truth, if Plaintiff and Class Members followed the payment schedules provided by Defendants, the payments were guaranteed to be insufficient to pay the principal and interest on the loan.

70.    At all times relevant, Defendants failed to clearly and conspicuously disclose to Plaintiff and the Class members that if they made payments according to the payment schedule set forth in the TILDS, negative amortization was not just a

1  mere possibility, it was an absolute certainty.

2      71.    At all times relevant, Defendants purposefully and intentionally failed to
3  disclose to Plaintiff, and all others similarly situated, the annual interest rate upon
4  which the payment schedule was based in order to mislead and deceive Plaintiff and
5  Class members into believing that they would be getting a loan with a low fixed
6  payment rate that would be sufficient to pay both interest and principal.

7      72.    At all times relevant, the payment amount provided by Defendants was
8  intended to and did deceive consumers into falsely believing they would, in fact,
9  receive the low interest rate upon which the payment schedule is based. While the
10  Note states the amount of Plaintiff's initial monthly payment, however, the initial
11  monthly payment amounts stated in the Note and TILDS are not, in anyway related to
12  the interest rate listed in the Note(s) and TILDS.

13      73.    Defendants employed the aforementioned bait-and-switch tactics in a
14  common and uniform class-wide basis. In particular, had Defendants clearly and
15  conspicuously disclosed a payment amount sufficient to cover both principle and
16  interest, the payment amounts would have to have been almost double the payment
17  amounts listed.

18      74.    The TILDS are also deceptive for much the same reason. The TILDS list
19  a schedule of payments, but for up to the five years the listed payment amounts have
20  no relation to, and are also not based on, the annual interest rate listed in the TILDS.

21      75.    At all times relevant, Defendants failed to clearly, conspicuously, and
22  accurately disclose a payment amount that corresponds to the APR being charged on
23  the loan and that was sufficient to pay the true costs of the loan. Plaintiff and the
24  Class members reasonably believed that if they made the payments according to
25  Defendants' payment schedule, the payments would, in fact, be paying off the loan.
26  However, the true fact is that the payment amounts stated in Defendants' payment
27  schedule did not include any principal on the loans at all and only covered a portion
28  of the interest Defendants were charging on these loans.

76.    Official Staff Commentary to 12 C.F.R. § 226.17(a)(1) states that "this standard requires that disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, *the disclosures must be presented in a way that does not obscure the relationship of the terms to each other*..."

77.    At all times relevant, Defendants' Option ARM loans violated 12 C.F.R. § 226.17(a)(1) in that the relationship between the payments, for up to the first five years of the loans, bear no relationship to the APR listed in the TILDS. Therefore, as a direct and proximate result, the form of disclosure used by Defendants obscured the relationship between the APR listed in the Note(s) and the APR listed in the TILDS and the payment schedule.

## C.    Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws

78.    12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19. Certain residential mortgage and variable-rate transactions.. . .**
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier...
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

79.    The negative amortization disclosure is required and must be made

-22-

1  clearly and conspicuously, and done in a manner that does not obscure its

2  significance. The disclosure must state whether the loan and payments established

3  under the terms dictated by the Defendants is a negative amortizing loan.

4        80.   In 1995, and continuing each time new Official Staff Commentary was

5  issued, the Federal Reserve Board made clear that when the loan was a variable rate

6  loan with payment caps, such as those that are the subject of this lawsuit, the

7  disclosure requires a definitive statement about negative amortization:

8                    12 CFR Part 226

9              [Regulation Z; Docket No. R-0863]

10              Monday, April 3, 1995

11  AGENCY: Board of Governors of the Federal Reserve System.

12       ACTION: Final rule; official staff interpretation.

13       "For the program that gives the borrower an option to cap monthly

14       payments, the creditor must fully disclose the rules relating to the

15       payment cap option, including the effects of exercising it (such as

16       **negative amortization occurs** and that the principal balance **will**

17       **increase**)..." (Found at C.F.R. § 226.19)

18        81.   At all times relevant, statutory and common law in effect make it

19  unlawful for a lender, such as Defendant HOME LOAN CENTER, INC., dba

20  LENDINGTREE LOANS, to fail to comply with the Federal Reserve Board's Official

21  Staff Commentary as well as Regulation Z and TILA.

22        82.   Defendants sold Plaintiff and the Class members Option ARM loans

23  which have a variable rate feature with payment caps. Defendants failed to include

24  any reference in the TILDS or in the Note(s) that negative amortization would occur

25  if Plaintiff and the Class members followed the payment schedule provided by

26  Defendants.

27        83.   In fact, the only place in the Note where Defendants even inferentially

28  references negative amortization caused Plaintiff and all other similarly situated

-23-

THIRD AMENDED CLASS ACTION COMPLAINT

1  reasonable persons to believe that negative amortization is only a mere possibility,
2  rather than an absolute certainty. In fact, these loans were designed in such a way so
3  as to make negative amortization an absolute certainty. And, even when a separate
4  explanation was provided, Defendants omitted the important material fact that these
5  loans and payment schedules would, in fact, guarantee negative amortization.

6      84.    Defendants' statement in the Note(s), at ¶ 3(E) states only, "[m]y monthly
7  payment *could* be less than the amount of the interest portion of the monthly payment
8  that would be sufficient to repay the unpaid principal I owe at the monthly payment
9  date in full on the Maturity Date in substantially equal payments." This was a
10  half-truth at best, and it does not alert or inform Plaintiff and Class Members that the
11  payment schedule provided by Defendants would absolutely guarantee that negative
12  amortization was going to occur on these loans. Rather, Defendants made it appear
13  that as long as the payments were made according to the schedule listed in the
14  TILDS, that there would be no negative amortization.

15      85.    At all times relevant, Defendants' statement in the Note, TILDS, and any
16  other disclosures they provided, described negative amortization as only a mere
17  possibility, and therefore was misleading and deceptive. In fact, Defendants' Option
18  ARM loan was designed in such a way as to guarantee negative amortization. TILA
19  demands more than a statement that the payment could be less, or "may" be less,
20  when Defendants knew that the payments were less, and would always be less, than
21  the full amount required to pay both principle and interest.

22

23      **D.    Defendants' Failure to Clearly and Conspicuously Disclose The**
24          **Legal Obligation Violates Truth in Lending Laws**

25      86.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the
26  terms of the legal obligation between the parties."

27      87.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires
28  that: "[t]he disclosures shall reflect the credit terms to which the parties are legally

-24-

1   bound as of the outset of the transaction. In the case of disclosures required under §

2   226.20(c), the disclosures shall reflect the credit terms to which the parties are legally

3   bound when the disclosures are provided."

4       88.     The Official binding staff commentary further states, at 12 C.F.R. §

5   226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in

6   the note or contract that evidences the agreement."

7       89.     Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a

8   loan contains a rate or payment cap that would prevent the initial rate or payment, at

9   the time of the first adjustment, from changing to the rate determined by the index or

10  formula at consummation, the effect of that rate or payment cap should be reflected in

11  the disclosures."

12      90.     At all times relevant during the liability period, Defendants' Option

13  ARM loans violated 12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not

14  disclose, and by omission, failed to disclose what Plaintiffs and the Class members

15  were legally obligated to pay. In particular, the Note(s) charged these borrowers a

16  much higher monthly amount than what Defendants disclosed. Defendants

17  accomplished this deception by only listing a partial payment in the TILDS, rather

18  than a payment amount that was sufficient to pay what these borrowers were actually

19  being charged for their loans, and were purportedly legally obligated to pay.

20      91.     As a direct and proximate result of Defendants' omissions and failures to

21  clearly and conspicuously disclose Plaintiffs' and the Class members' legal

22  obligations under the loans, Defendants took the partial payments and secretly added

23  the deficit, each month, to principal, thereby causing negative amortization to occur.

24

25      **E.    Defendants' Failure to Clearly and Conspicuously Disclose the**

26          **Composite APR Violates Truth in Lending**

27      92.     Defendants provided Plaintiff and the Class members with multiple,

28  conflicting annual interest rates when describing the costs of this loan. On the TILDS,

1    Defendants set forth one annual interest rate, while on the Note, Defendants set forth

2    a different annual interest rate.

3        93.    The FRB's Commentary to 12 C.F.R § 226.(17)(C)-6 requires that the

4    APR must reflect a composite annual percentage rate based on the initial rate for as

5    long as it is charged and, for the remainder of the term, the rate that would have been

6    applied using the index or formula at the time of consummation.

7            "in a variable-rate transaction with a ... discounted or premium rate,

8            *disclosures should not be based solely on the initial terms*. In those

9            transactions, *the disclosed annual percentage rate should be a*

10           *composite rate* based on the rate in effect during the initial period and

11           the rate that is the basis of the variable-rate feature for the remainder of

12           the term."

13       94.    The reason for this requirement is clear. Consumers cannot make an

14   informed decision when they cannot compare the cost of credit to other proposals. It

15   is therefore incumbent upon lenders to show the composite interest rate in effect so

16   that the borrowers can understand exactly what they will be paying for the loan.

17       95.    A lender violates TILA, and Reg. Z by failing to list the composite

18   annual interest rate in variable rate loans that have a discounted initial rate. The loan

19   sold to Plaintiff and Class members by Defendants is a variable-rate loan. At all times

20   relevant during the liability period, Defendants listed an annual interest rate in the

21   Note(s) that, in truth, would only be provided for the first thirty (30) to forty-five (45)

22   days of a thirty year loan, and would, with one hundred percent certainty, be

23   increased after that first month. Because Defendants failed to clearly and

24   conspicuously disclose the composite annual percentage rate on these loans, and

25   instead listed a different interest rate in the documents provided to consumers,

26   Defendants violated TILA and Regulation Z, and failed to provide disclosures that

27   did not obscure relevant information.

28

1
2

    **F.**    **Defendants' Failure to Clearly and Conspicuously Disclose**
              **that the Initial Interest Rate is Discounted Violates TILA**

3      96.    Variable rate loans are based on a "margin" and an "index." The index is
4 often the Prime Rate or the LIBOR exchange rate. The margin is the amount the
5 lender charges over and above that indexed rate.

6      97.    TILA and Regulation Z require that when the interest rate on a loan is a
7 "discounted rate" (i.e., not based on the index and margin) a separate disclosure is
8 required. The disclosure must also inform borrowers that, after the discounted rate
9 falls away, the interest rate will increase and it must conspicuously describe all of the
10 circumstances under which the interest rate will increase. Further, the disclosure must
11 inform the borrower what the true cost of the loan is.

12      98.    The Federal Reserve Board established disclosure requirements for
13 variable rate loans. 26 C.F.R. § 226.19 requires lenders to disclose the frequency of
14 interest rate and payment adjustments to borrowers. If interest rate changes will be
15 imposed more frequently or at different intervals than payment changes, a creditor
16 must disclose the frequency and timing of both types of changes.

17      99.    The Notes at issue only stated that the interest rate "may" increase in the
18 future. However, it was absolutely certain, and not merely possible, that the interest
19 rate would increase above the discounted annual interest rate after thirty (30) days.
20 At all times relevant, Defendants failed to clearly, conspicuously and unambiguously
21 disclose this critical fact as required by law.

22     100.    Further violating TILA's disclosure requirements, Defendants' loan
23 documents state that the interest rate *may* increase during the term of this transaction
24 if the index increases. That statement is incomplete and misleading, as an increase in
25 the index was not the only thing that could cause an increase in the interest rate.
26 Because the disclosed interest rate was discounted, it was absolutely certain to
27 increase even without any change in the index. Thus, Defendants' disclosures were
28 unclear, inconspicuous, ambiguous and misleading in violation of TILA.

101. Defendants failed to disclose, and by omission, failed to inform Plaintiff and the Class members that the initial interest rate was discounted, and that it was absolutely certain to increase even when the index did not rise. Due to the initial discounted interest rate being listed at 1.250%, the interest rate would increase because the index and margin were several points higher. Even when Defendants did provide a disclosure that stated the initial payment was not based on the index, they did so in a manner that was not clear and conspicuous. Because the loan documents failed to provide this extremely important material information in a clear and conspicuous manner that did not obscure its importance, Defendants' disclosure failed to satisfy the requirements of TILA.

102. Defendants failed to disclose to Plaintiff and the Class members that their interest rate was, with 100% certainty, going to increase, regardless of whether the index upon which their loans are based changed. As such, Defendants violated TILA and Regulation Z by providing Plaintiff and the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

103. Defendants also failed to disclose all of the ways by which the interest rate applicable to Plaintiff's and Class members' loans could increase, in violation of TILA.

**G.  Defendants' Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates  Truth in Lending Laws**

104. The Option ARM loans at issue contained a variable rate feature with an initial teaser rate with payment caps. The payment cap is a limit on how much the payment may be increased annually. Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year. The loans issued by Defendant HOME LOAN CENTER, INC., dba LENDINGTREE LOANS had a 7.5% payment cap, which means that a borrower would only see their payment rise each

-28-

1  year by a maximum of 7.5%. (i.e. a $1,000 monthly payment in year one, could go to

2  a $1,075 payment in year two.)

3       105.  The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii) states

4  that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or

5  payment, at the time of the first adjustment, from changing to the rate determined by

6  the index or formula at consummation, the effect of that rate or payment cap should

7  be reflected in the disclosures." Thus, at all times relevant during the liability period,

8  Defendants had a duty to Plaintiff and the Class members to disclose in the payment

9  schedule of the TILDS the effect the payment cap would have on the loans.

10      106.  Defendants failed to disclose, and by omission, failed to inform Plaintiff

11  and the Class members that the payment cap would cause hundreds, if not thousands

12  of dollars, each month, to be secretly added to principal.

13      107.  As a direct and proximate result, Defendants failed to disclose, and by

14  omission, failed to inform Plaintiff and the Class members of the effect of the

15  payment cap in violation of 12 C.F.R. § 226.17.

16      108.  The violations of TILA and Regulation Z described in this Complaint are

17  apparent on the face of the Note, TILDS and other disclosure documents provided to

18  Plaintiff and the Class because the disclosures provided can be determined to be

19  incomplete or inaccurate by a comparison among the TILDS, the other disclosure

20  statements, and the Note described herein.

21      109.  As a direct and proximate result of Defendants' violations of TILA, as

22  alleged herein. Plaintiff and the Class members have suffered injury in an amount to

23  be determined at time of trial. If Defendants had not violated TILA and had instead

24  clearly and conspicuously disclosed the material terms of Defendants' Option ARM

25  loan, as alleged herein, Plaintiff and the Class members would not have entered into

26  the home loan contracts which are the subject of this action. Because Defendants

27  failed to make the proper disclosures required under TILA, Plaintiff and the Class

28  members now seek redress in an amount and/or type as proven at time of trial.

**H.**   **Defendants' Failure to Cancel Their Security Interest and Refund**
**All of Monies Paid by Plaintiff and the Class**

110.   Plaintiff's complaint constituted a demand for rescission pursuant to 15 U.S.C. §1653 and 13 C.F.R. §226.23.

111.   Pursuant to statute, Defendants were required, within 20 days after service of the Complaint to (1) return to Plaintiff all monies paid by Plaintiff to date and (2) cancel all security interests in Plaintiff's residence.  Defendants' failed to comply with those obligations and Plaintiff and the Class have been damaged thereby.

112.   WHEREFORE, Plaintiff and the Class members are entitled to an order declaring that Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and the Class have the right to rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiffs' individual mortgage and those of any class member desirous of such relief, and for an order awarding other relief as the Court deems just and proper.

**VII.**

**SECOND CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200**

***et. seq.* - "Unlawful" Business Acts or Practices**

**Predicated on Violations of TILA**

**(As Against All Defendants)**

113.   Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

114.   Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and in their capacity as a private attorneys general against all Defendants for their unlawful business acts and/or practices pursuant to California Business & Professions Code §§17200, *et seq.*, which prohibits all unlawful business acts and/or

1   practices.

2       115.   Plaintiffs assert these claims as representatives of an aggrieved group

3   and as a private attorneys general on behalf of the general public and other persons

4   who have expended funds that the Defendants should be required to pay or reimburse

5   under the equitable and restitutionary remedies provided by California Business &

6   Professions Code §§ 17200, *et seq.*

7       116.   The unlawful acts and practices of Defendants alleged above constitute

8   unlawful business acts and/or practices within the meaning of California Business &

9   Professions Code §§ 17200, *et seq.*

10      117.   By engaging in the above-described acts and practices, Defendants have

11   committed one or more acts of unfair competition within the meaning of Business &

12   Professions Code §§ 17200, *et seq.*

13      118.   Defendants' unlawful business acts and/or practice as alleged herein have

14   violated numerous laws and/or regulations and said predicate acts are therefore *per se*

15   violations of Business & Professions Code §§ 17200, *et seq.* These predicate

16   unlawful business acts and/or practices include Defendants' failure to comply with

17   the disclosure requirements mandated by TILA, 15 U.S.C. § 1601, *et seq.*, Regulation

18   Z and Official Staff Commentary issued by the Federal Reserve Board. And, as

19   described in more detail above, Defendants also failed in a number of ways to clearly

20   or accurately disclose the terms of the ARM loan to Plaintiffs and the Class members

21   as required under TILA.

22      119.   Defendants' misconduct as alleged herein gave Defendants an unfair

23   competitive advantage over their competitors.

24      120.   As a direct and proximate result of the aforementioned acts, Defendants,

25   and each of them, received monies and continues to hold the monies expended by

26   Plaintiffs and others similarly situated who purchased the ARM loans as described

27   herein.

28      121.   In addition to the relief requested in the Prayer below, Plaintiffs seek the

1  imposition of a constructive trust over, and restitution of, the monies collected and
2  realized by Defendants.

3      122.  The unlawful acts and practices. as fully described herein, present a
4  continuing threat to members of the public to be mislead and/or deceived by
5  Defendants as described herein. Plaintiffs and other members of the general public
6  have no other remedy of law that will prevent Defendants' misconduct as alleged
7  herein from occurring and/or reoccurring in the future.

8      123.  As a direct and proximate result of Defendants' unlawful conduct alleged
9  herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of
10  equity in their homes. Plaintiffs and the Class members are direct victims of the
11  Defendants' unlawful conduct, as herein alleged, and each has suffered injury in fact,
12  and have lost money or property as a result of Defendants' unfair competition.

13      124.  WHEREFORE, Plaintiffs and members of the Classes are entitled to
14  equitable relief, including restitution, restitutionary disgorgement of all profits
15  accruing to Defendants because of their unlawful and deceptive acts and practices,
16  attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining
17  Defendants from their unlawful activity.

18                              **VIII.**
19                    **THIRD CAUSE OF ACTION**
20                      **Fraudulent Omissions**
21                      **(Against All Defendants)**

22      125.  Plaintiffs incorporate all preceding paragraphs as though fully set forth
23  herein.

24      126.  Defendants had a duty to disclose to Plaintiffs, and each Class member
25  (i) that the "teaser" rate promoted by Defendants and upon which the provided
26  payment schedule was based would certainly not be honored by Defendants after just
27  30 days, but, instead, Defendants would increase the applicable interest rate at that
28  time; (ii) that Defendants would account for Plaintiffs' and Class Members' loan

1  payments in a way that made it absolutely certain that negative amortization would

2  occur rather than making negative amortization a mere possibility; (iii) that the

3  payment schedule provided to Plaintiffs and the Class Members was wholly unrelated

4  to the interest rate actually applicable to Plaintiffs' and Class Members' loans; (iv)

5  that the payment rate reflected in the TILDS was insufficient to pay both principal

6  and interest; and (v) that negative amortization was absolutely certain to occur if

7  Plaintiffs and Class Members mad the payments reflected in the payment schedules

8  Defendants provided.

9      127.   Defendants owed these duties of disclosure because they made partial

10  representations of material facts known to them; because Defendants had exclusive

11  knowledge of these material facts which were not known to Plaintiffs or the Class;

12  and because Defendants actively concealed these material facts from Plaintiffs and

13  the Class.

14      128.   The Note(s) state at ¶3 (A) "I will pay *principal and interest* by making

15  payments every month." The Note(s) then state, at ¶ 7(A), under the heading

16  "BORROWERS FAILURE TO PAY AS REQUIRED," that "[t]he amount of the

17  charge will be 5.000% of *my overdue payment of principal and interest*." However,

18  the true facts are that the payment amounts shown in the schedules provided by

19  Defendants were completely insufficient to pay both principal and interest. In fact, the

20  payment amounts provided in the TILDS were not even sufficient to pay enough

21  interest to avoid negative amortization which, under the terms of the Note(s) was

22  absolutely certain to occur.

23      129.   The Note(s) further state, at ¶ 3(E) that "My monthly payment *could be*

24  *less* than the amount of the interest portion of the monthly payment that would be

25  sufficient to repay the unpaid principal. . ." and, for "each month that my monthly

26  payment is less than the interest portion, the Note Holder will subtract the amount of

27  my monthly payment from the amount of the interest portion and will add the

28  difference to my unpaid principal." It goes on to state that "[t]he Note Holder also

1  will add interest on the amount of this difference to my unpaid principal."

2  However, the payment schedules provided by Defendants in the TILDS were

3  absolutely incapable of covering the amount of interest due and therefore these

4  statements were false in that they omitted this material fact.

5      130.   The Note(s) list an interest rate and a payment amount based on that

6  initial 1.250% interest rate. However, the TILDS Defendants gave to Plaintiffs and

7  the Class members include the schedule of payments (including that initial payment

8  rate) which discloses a different, higher interest rate. In truth, the payment schedule

9  stated in the TILDS is wholly unrelated to the true interest rate being charged on the

10  loans and, at all times relevant during the liability period, Defendants failed to

11  disclose, and by omission, failed to inform Plaintiffs and the Class members of this

12  important material information.

13      131.   The aforementioned omitted information was not known to Plaintiffs and

14  the Class members and which, at all times relevant, Defendants failed to disclose

15  and/or actively concealed by making such statements and partial, misleading

16  representations to Plaintiffs and all others similarly situated. Because the Option

17  ARM loans did not provide a low interest rate for the first three (3) to five (5) years of

18  the Note, and the payment rate disclosed by Defendants was insufficient to pay both

19  principle and interest, negative amortization occurred.

20      132.   Defendants, and each of them, failed to disclose, and by omission failed

21  to inform Plaintiffs and each Class member that (i) the payment rate provided to

22  Plaintiffs and the Class members on the TILDS was insufficient to pay both principle

23  and interest; (ii) that negative amortization was absolutely certain to occur if

24  Plaintiffs and the Class members made payments according to the payment schedule

25  provided by Defendants; and (iii) that loss of equity and/or loss of Plaintiffs' and the

26  Class members' residence was substantially certain to occur if Plaintiffs and the Class

27  members made payments according to the payment schedule provided by Defendants.

28      133.   As alleged herein, Defendants had a duty to disclose to Plaintiffs, and

1  each Class member and at all times relevant, failed to disclose and/or concealed

2  material facts by making partial representations of some material facts when

3  Defendants had exclusive knowledge of material facts, including but not limited to,

4  (i) the disclosed interest was not the actual interest rate charged on the Note(s), (ii)

5  that negative amortization was certain to occur, and (iii) that the initial rate was

6  discounted. The concealed and omitted information was not known to Plaintiffs and

7  the Class members and which, at all times relevant, Defendants failed to disclose

8  and/or actively concealed by making such statements and partial, misleading

9  representations to Plaintiffs and all others similarly situated. Because the Option

10 ARM loans did not provide a low interest rate for the first three (3) to five (5) years of

11 the Note, and the payment rate disclosed by Defendants was insufficient to pay both

12 principle and interest, negative amortization occurred.

13     134.   From the inception of the Option ARM loan scheme, until the present,

14 Defendants have engaged in a purposeful and fraudulent scheme to omit material

15 facts known solely to them, and not reasonably discoverable by Plaintiffs and the

16 Class members, regarding the true facts concerning the actual interest rate charged on

17 the loans, that negative amortization that was certain to occur, and that the initial

18 interest rate, in fact, was discounted, all of which Defendants were duty bound to

19 clearly and conspicuously disclose to Plaintiffs and the Class members in the TILDS.

20     135.   Defendants have known from the inception of their Option ARM loan

21 scheme that these loans, (i) do not provide the promised annual interest rate for the

22 first three (3) to five (5) years of the Note, (ii) that negative amortization would occur

23 and that Plaintiffs' and the Class members' principle balances would increase, and (iii)

24 that the initial interest rate was discounted and did not accurately reflect the

25 interest that consumers were being charged on the loans.

26     136.   Defendants purposefully and intentionally devised this Option ARM

27 loan scheme to defraud and/or mislead consumers into believing that these loans

28 would provide a low-interest rate loan, for the first three (3) to five (5) years of the

1    note and that if they made their payments according to the payment schedule provided

2    by Defendants that it would be sufficient to pay both principle and interest.

3        137.   The omitted information, as alleged herein, was material to Plaintiffs and

4    each Class member in that had the information be disclosed, Plaintiffs and each Class

5    member would not have entered into the loans.

6        138.   As a direct and proximate result of Defendants' failures to disclose and

7    omission of material facts, as alleged herein, Plaintiffs and each Class member have

8    suffered damages, which include, but are not limited to the loss of equity Plaintiffs

9    and each Class member had in their homes prior to entering these loans.

10       139.   The wrongful conduct of Defendants, as alleged herein, was willful,

11   oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and

12   in conscious disregard for the well being of Plaintiffs, and others similarly situated.

13   Accordingly, Plaintiffs, and the others similarly situated seek punitive damages

14   against Defendants in an amount to deter Defendants from similar conduct in the

15   future.

16       140.   WHEREFORE, Plaintiffs and members of the Class are entitled to all

17   legal and equitable remedies provided by law, including but not limited to actual

18   damages, exemplary damages, prejudgment interest and costs.

19                                       **IX.**

20                       **FOURTH CAUSE OF ACTION**

21   **Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et**

22           **seq., "Unfair" and "Fraudulent" Business Acts or Practices**

23                       **(Against All Defendants)**

24       141.   Plaintiffs incorporate all preceding paragraphs as though fully set forth

25   herein.

26       142.   Plaintiffs bring this cause of action on behalf of themselves, on behalf of

27   the Class, and as a private attorneys general against all Defendants for their unfair,

28   fraudulent and/or deceptive business acts and/or practices pursuant to California

1  Business & Professions Code §§ 17200, *et seq.*, which prohibits all unfair and/or

2  fraudulent business acts and/or practices.

3      143.   Plaintiffs assert these claims as a representative of an aggrieved group

4  and as private attorneys general on behalf of the general public and other persons who

5  have expended funds that the Defendants should be required to pay or reimburse

6  under the equitable and restitutionary remedies provided by California Business &

7  Professions Code §§ 17200, *et seq.*

8      144.   The instant claim is predicated on the generally applicable duty of any

9  contracting party to not misrepresent material facts, and on the duty to refrain from

10  unfair and deceptive business practices. The Plaintiffs and the Class members hereby

11  seek to enforce a general proscription of unfair business practices and the requirement

12  to refrain from deceptive conduct. The instant claim is predicated on duties that

13  govern anyone engaged in any business and anyone contracting with anyone else.

14      145.   At all times relevant, Defendants engaged in a pattern of deceptive

15  conduct and concealment aimed at maximizing the number of borrowers who would

16  accept their Option ARM loan. Defendants, and each of them, marketed and sold

17  Plaintiffs and the Class members a deceptively devised financial product. Defendants

18  marketed and sold their Option ARM loan product to consumers, including Plaintiffs,

19  in a false or deceptive manner. Defendants marketed and advertised to the general

20  public through brochures, flyers and other substantially identical marketing material,

21  a loan which appeared to have a very low, fixed interest rate for a period of three (3)

22  to five (5) years and no negative amortization. Further, Defendants disguised from

23  Plaintiffs and the Class members the fact that Defendants' Option ARM loan was

24  designed to, and did, cause negative amortization to occur.

25      146.   Defendants lured Plaintiffs and the Class members into the Option ARM

26  loan with promises of low fixed interest. Once Plaintiffs and the Class members

27  entered into these loans, Defendants switched the interest rate charged on the loans to

28  a much higher rate than the one they advertised and promised to Plaintiffs and the

1  Class members. After entering these loans, Class members could not escape because

2  Defendants purposefully placed into these loans an extremely onerous prepayment

3  penalty that made it prohibitively expensive for consumers to extricate themselves

4  from these loans. Thus, once on the hook, consumers could not escape from

5  Defendants loans.

6      147.  Plaintiffs and Class members were consumers who applied for a

7  mortgage loan through Defendants. During the loan application process, in each case,

8  Defendants uniformly promoted and informed Plaintiffs and Class

9  members that in accepting these loan terms, Plaintiffs and Class members would be

10  able to lower their mortgage payment and save money.

11      148.  Defendants promoted their Option ARM loan as having a low fixed

12  interest rate, i.e., typically between 1% and 3%. However, Defendants did not

13  disclose that this was just a "teaser" rate, the purpose of which was to get consumers

14  to enter into loan agreements with Defendants. Defendants did not disclose to

15  Plaintiffs and the Class members that the "teaser" rate was not the fixed rate that

16  Defendants would actually charge Plaintiffs and the Class members on their

17  outstanding loan balances.

18      149.  Based on the Defendants' representations and conduct, Plaintiffs and the

19  Class members agreed to finance their primary residence through Defendants' Option

20  ARM loan. Plaintiffs and the Class members were told they were being sold a home

21  loan with a low interest rate, fixed for the first three (3) to five (5) years of the loan.

22  Plaintiffs and the Class members were also lead to believe that if they made payments

23  based on the "teaser" rate, and the payment schedule provided to them by Defendants,

24  the loan was a no negative amortization home loan. After, the fixed interest period,

25  Plaintiffs and the Class members were told their rate "may" change. And, Plaintiffs

26  believed they would then be able to re-finance to another home loan. Plaintiffs and

27  the Class members believed these facts to be true because that is what the Defendants

28  wanted consumers to believe, that is what Defendants lead consumers to believe.

Plaintiffs and each Class member relied on Defendants' misleading statements and omissions concerning the terms and conditions of Defendants' Option ARM loan and Plaintiffs and each Class member entered into these Option ARM loans as a result of Defendants' misleading statements and omissions concerning the terms and conditions as alleged herein.

150.    In fact, Defendants' Option ARM loan possessed a low, fixed payment but not a low, fixed interest rate. Unbeknownst to Plaintiffs and Class members, the actual interest rate they were charged on their loans was not fixed. After purchasing Defendants' Option ARM loan product, Plaintiffs and class members never actually received the benefit of the low advertised interest rate, or, in some cases, consumers received the low rate for just a single month. Immediately, thereafter, Defendants in every instance and for every loan increased the interest rate they charged Plaintiffs and the Class members. Once Plaintiffs and Class members accepted Defendants' Option ARM loan, they had no viable option to extricate themselves because of these loan agreements included a draconian pre-payment penalty.

151.    Defendants perpetrated a bait and switch scheme on Plaintiffs and Class members. Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan as having a fixed interest rate was deceptive and unfair. Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

152.    The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business & Professions Code §§ 17200, *et seq.*

153.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business & Professions Code §§ 17200, *et seq.*

154.    Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose

1 and omission of material facts have been and continue to be unfair, fraudulent, untrue

2 and/or deceptive.

3    155.   Defendants' misconduct as alleged herein gave Defendants an unfair

4 competitive advantage over their competitors.

5    156.   As a direct and proximate result of the aforementioned acts, Defendants,

6 and each of them, received monies and continues to hold the monies expended by

7 Plaintiffs and others similarly situated who purchased the ARM loans as described

8 herein.

9    157.   In addition to the relief requested in the Prayer below, Plaintiffs seek the

10 imposition of a constructive trust over, and restitution of, the monies collected and

11 realized by Defendants.

12    158.   The harm to Plaintiffs, members of the general public and others

13 similarly situated outweighs the utility of Defendants' policies, acts and/or practices

14 and, consequently Defendants' conduct herein constitutes an unlawful business act or

15 practice within the meaning of California Business & Professions Code §§ 17200, *et*

16 *seq.*

17    159.   The unfair, deceptive and/or fraudulent business practices of Defendants,

18 as fully described herein, present a continuing threat to members of the public to be

19 mislead and/or deceived by Defendants' ARM loans as described herein. Plaintiffs

20 and other members of the general public have no other remedy of law that will

21 prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring

22 in the future.

23    160.   As a direct and proximate result of Defendants' unfair and/or fraudulent

24 conduct alleged herein, Plaintiffs and Class Members have lost thousands if not

25 millions of dollars of equity in their homes. Plaintiffs and Class members are direct

26 victims of the Defendants' unlawful conduct, and each has suffered injury in fact, and

27 have lost money or property as a result of Defendants' unfair competition.

28    161.   WHEREFORE, Plaintiffs and members of the Classes are entitled to

1  equitable relief, including restitution, restitutionary disgorgement of all profits

2  accruing to Defendants because of their unfair, fraudulent, and deceptive acts and/or

3  practices, attorneys' fees and costs, declaratory relief, and a permanent injunction

4  enjoining Defendants from their unfair, fraudulent and deceitful activity.

5                                      **X.**

6                      **FOURTH CAUSE OF ACTION**

7                           **Breach of Contract**

8                         **(Against All Defendants)**

9       162.   Plaintiffs incorporate all preceding paragraphs as though fully set forth

10 herein.

11      163.   Plaintiffs and Class members entered into a written home loan agreement

12 - the contract or Note - with Defendants. The Note was drafted by Defendants and

13 could not be modified by Plaintiffs or Class members. The Note describes terms and

14 respective obligations applicable to the parties herein.

15      164.   The Note describes Plaintiffs' and Class members' interest rate on the

16 loan as a low interest rate, typically between 1% and 3%. In addition, as required by

17 federal law, the Defendants provided a Truth In Lending Disclosure concerning the

18 home loan agreement that shows a payment schedule based on that low 1% to 3%

19 interest rate. For the first three (3) to five (5) years the payment schedule shows that

20 Plaintiffs' and Class members' monthly payment obligations to Defendants are the

21 exact payments necessary to pay off all principal and interest during the terms of the

22 loans if, indeed, the interest rate actually charged by Defendants on the loans was the

23 low interest rate promised.

24      165.   Defendants drafted the Note and did not allow Plaintiffs or the Class

25 members any opportunity to make changes to the Note and due to Defendants'

26 superior bargaining position, the Note was offered on a take it or leave it basis. As

27 such the Notes at issue are contracts of adhesion.

28      166.   Defendants expressly and/or through their conduct and actions agreed

1  that Plaintiffs' and the Class members' monthly payment obligations would be
2  sufficient to pay both the principal and interest owed on the loans. Defendants
3  breached this agreement and never applied any of Plaintiffs' and the Class members'
4  payments to principal.  The contract expressly states, for example, at part 3(A) that
5  Plaintiffs will "pay principal and interest by making payments every month."

6      167.   The written payment schedules prepared by Defendants, and applicable
7  to Plaintiffs' and Class members' loans, show that the payment amounts owed by
8  Plaintiffs and Class members to Defendants in year one are exactly equal to the
9  amount required to pay off the loan if, indeed, the interest actually charged on the
10  loan was the low interest rate promised. If the Defendants did as promised, the
11  payments would have been sufficient to pay both principal and interest amounts.

12      168.   Instead, Defendants immediately raised Plaintiffs' and Class members'
13  interest rates and applied *no part* of Plaintiffs' and Class members' payments were
14  applied to the principal balances on their loans. In fact, because Defendants charged
15  more interest than was agreed to and payments, as disclosed by Defendants, were, at
16  all times relevant, insufficient to cover the interest charge and thus principal balances
17  increased (which is the negative amortization built into the loan).

18      169.   Defendants breached the written contractual agreement by failing to
19  apply any portion of Plaintiffs' and the Class members' monthly payments towards
20  their principal loan balances.

21      170.   Plaintiffs and the Class members, on the other hand, did all of those
22  things the contract required of them. Plaintiffs and the Class members made monthly
23  payments in the amount required by the terms of the Note and reflected in the
24  payment schedule prepared by Defendants.

25      171.   As a result of Defendants' breach of the agreement, Plaintiffs and the
26  Class members have suffered harm. Plaintiffs and Class members have incurred
27  additional charges to their principal loan balance. Plaintiffs and Class members have
28  incurred and will continue to incur additional interest charges on the principal loan

-42-

1  balance and surplus interest added to Plaintiffs' and Class members' principal loan

2  balance. Furthermore, Defendants' breach has placed Plaintiffs and Class members in

3  danger of losing their homes through foreclosure, as Defendants have caused

4  Plaintiffs' and Class members' principal loan balances to increase and limited these

5  consumers' ability to make their future house payments or obtain alternative home

6  loan financing.

7      172.   At all times relevant, there existed a gross inequality of bargaining power

8  between the parties to the ARM loan contracts. At all times relevant, Defendants

9  unreasonably and unconscionably exploited their superior bargaining position and

10 foisted upon Plaintiffs and the Class members extremely harsh, one-sided provisions

11 in the contract, which Plaintiffs and Class members were not made aware of and did

12 not comprehend (*e.g.*, Defendants' fraud and failures to clearly and conspicuously

13 disclose as alleged herein), and which attempt to severely limit Defendants'

14 obligations under the contracts at the expense of Plaintiffs and Class members, as

15 alleged herein. As a result of these extremely harsh, one-sided provisions, including

16 but not limited to the provisions which seek to limit the "teaser" interest rate for one

17 month or less, these provisions are unconscionable and therefore unenforceable.

18     173.   WHEREFORE, Plaintiffs and members of the Classes are entitled to

19 declaratory relief, compensatory damages proximately caused by Defendants' breach

20 of contract as alleged herein, pre-judgment interest, costs of suit and other relief as

21 the Court deems just and proper.

22                                    **XI.**

23                         **FIFTH CAUSE OF ACTION**

24 **Tortuous Breach of Implied Covenant of Good Faith and Fair Dealing**

25                         **(Against All Defendants)**

26     174.   Plaintiffs incorporate all preceding paragraphs as though fully set forth

27 herein.

28     175.   Defendants entered into written agreements with Plaintiffs and Class

-43-

1   members based on representations Defendants made directly and indirectly to

2   Plaintiffs and the Class members about the terms of their loans.

3       176.   Defendants expressly represented to Plaintiffs and the Class members

4   that they would provide loans secured by Plaintiffs' and Class members' homes, and

5   that the loans would have a fixed interest rate at promised low interest rate for a

6   period of three (3) to five (5) years.

7       177.   Defendants also represented that if Plaintiffs and the Class members

8   made the monthly payments in the amount prescribed by Defendants that no negative

9   amortization would occur. The Note expressly states and/or implies that Plaintiffs'

10  and Class members' monthly payment obligation *will* be applied to pay both principal

11  and interest owed on the loan. The Note further states that for each monthly payment

12  Plaintiffs and the Class members interest shall be paid before principal.

13      178.   The written payment schedules prepared by Defendants, and applicable

14  to Plaintiffs' and Class members' loans, show that the payment amounts owed by

15  Plaintiffs and Class members to Defendants in year one are exactly equal to the

16  amount required to pay off the loan if, indeed, the interest actually charged on the

17  loan was the low interest rate promised. If the Defendants acted as promised, the

18  payments would have been sufficient to pay both principal and interest.

19      179.   Instead, Defendants immediately raised Plaintiffs' and Class members'

20  interest rates and applied *no part* of Plaintiffs' and Class Members' payments to

21  principal. In fact, because Defendants charged more interest than was disclosed and

22  agreed to in the loans, Plaintiffs' and the Class members' payments were insufficient

23  to cover the interest that Defendants charged resulting in an increase in the amount of

24  principal Plaintiffs and the Class members owed on their homes.

25      180.   Defendants unfairly interfered with Plaintiffs' and Class members' rights

26  to receive the benefits of the contract. These loans will cost Plaintiffs and Class

27  members thousands of dollars more than represented by Defendants. Plaintiffs and

28  Class members did not receive the fixed low interest rate home loan promised them

by Defendants. Defendants have caused Plaintiffs and Class members to lose equity in their homes and therefore have denied Plaintiffs and Class members the enjoyment, security of one of their most important investments.

181.   Plaintiffs and Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and Class members made monthly payments in the amount required by the terms of the Note and reflected in the payment schedule prepared by Defendants.

182.   At all times relevant, Defendants unreasonably denied Plaintiffs and members of the Class the benefits promised to them under the terms of the Note, including but not limited to a low interest rate for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment amount sufficient to pay both principle and interest so as to avoid negative amortization and the other failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. § 1601, et seq., Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein.

183.   Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein.

184.   Defendants' breaches, as alleged herein were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rates for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

185.   Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

186.   Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions. Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiffs and the General Public.

187.   At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent.

188.   As a result of Defendants' conduct, Plaintiffs and Class members have suffered harm. Plaintiffs and the Class members have incurred additional charges to their principal loan balance. Plaintiffs and Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and Class members' principal loan balance. Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members' principal loan balances to increase limiting these consumers' ability to make their future house payments or obtain alternative home loan financing.

189.   WHEREFORE, Plaintiffs and members of the Classes are entitled to declaratory relief, all damages proximately caused by Defendants' breach of the implied covenant of good faith and fair dealing as alleged herein, punitive damages, pre judgment interest, costs of suit and other relief as the Court deems just and proper.

## XII.
## PRAYER FOR RELIEF

-46-

1    WHEREFORE, Plaintiffs and all Class members pray for judgment against

2  each Defendant, jointly and severally, as follows:

3    A.    An order certifying this case as a class action and appointing Plaintiffs

4  and their counsel to represent the Class;

5    B.    For actual damages according to proof;

6    C.    For compensatory damages as permitted by law;

7    D.    For consequential damages as permitted by law;

8    E.    For statutory damages as permitted by law;

9    F.    For punitive damages as permitted by law;

10   G.    For rescission;

11   H.    For equitable relief, including restitution;

12   I.    For restitutionary disgorgement of all profits Defendants obtained as a

13         result of their unfair competition;

14   J.    For interest as permitted by law;

15   K.    For Declaratory Relief;

16   L.    For a mandatory injunction requiring Defendants to permanently include

17         in every Option ARM loan and disclosure statement: (i) clear and

18         conspicuous disclosure of the actual interest rate on the Note(s) and

19         disclosure statement(s) as required under 12 C.F.R. § 226.17 by; (ii)

20         clear and conspicuous disclosure in the Note(s) and the disclosure

21         statement(s) that payments on the variable interest rate loan during the

22         initial period at the teaser rate will result in negative amortization and

23         that the principal balance will increase as required under 12 C.F.R. §

24         226.19; and (iii) clear and conspicuous disclosure that the initial interest

25         rate provided is discounted and does not reflect the actual interest that

26         Plaintiffs and Class members would be paying on the Note(s).

27   M.    For an injunction prohibiting Defendants from foreclosing upon or

28         selling Plaintiffs' or Class Members' homes;

-47-

THIRD AMENDED CLASS ACTION COMPLAINT

1    N.    For reasonable attorneys' fees and costs; and

2    O.    For such other relief as is just and proper.

3

4                                      KIESEL BOUCHER LARSON LLP

5    DATED: July 21, 2008

6

7                              By:    PAUL R. KIESEL, ESQ.
                                      PATRICK DeBLASE, ESQ.
8                                     MICHAEL C. EYERLY, ESQ.
                                      8648 Wilshire Boulevard
9                                     Beverly Hills, California 90210

10                                    JEFFREY K. BERNS, ESQ.
                                      ARBOGAST & BERNS, LLP
11                                    19510 Ventura Blvd, Ste 200
                                      Tarzana, California 91356

12                                    Attorneys for Plaintiffs

13                         **DEMAND FOR JURY TRIAL**

14       Plaintiffs hereby respectfully demand a jury trial to the extent permitted by law.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-48-

# Exhibit 1

**EXHIBIT 1**



# ADJUSTABLE RATE NOTE
### (12 MAT Payment and Rate Caps)

MIN: 1001968-0002107576-2

Loan # 2107576

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

FEBRUARY 1, 2006           IRVINE                      , CALIFORNIA
[Date]                     [City]                         [State]

14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 250,000.00           (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST
**(A) Interest Rate**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of        1.250  %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**
The interest rate I will pay may change on the first day of APRIL 1           , 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**
My interest rate will never be greater than           9.950 %.

**(D) Index**
Beginning with the first Interest Rate Change Date, my Interest Rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)" ("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.




**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 500/1000                                    percentage point(s) ( 3.500 %) to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3.    **PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on APRIL 1 2006 . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on MARCH 1, 2036           , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618                                    or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 833.13           . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the           1st                day of APRIL          , 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND 000/1000     percent (           110.000 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.



**(G) Required Full Payment**
On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.   NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of my monthly payment by the end of   15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.



**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

6480185 (0508)                                    Page 4 of 5                                    Form 3003
                                                                                                8/05

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)         _____ (Seal)
CLARENCE E. BOSCHMA         -Borrower      SHIRLEY C. BOSCHMA         -Borrower


_____ (Seal)         _____ (Seal)
                            -Borrower                                 -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:
WITHOUT RECOURSE

HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

BY: _____

ITS:




## ADDENDUM TO ADJUSTABLE RATE NOTE
### (Prepayment)

Loan #:2107576

THIS ADDENDUM is made this 1st day of FEBRUARY 2006 , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum.  A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment."  A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge.  If within the first    THREE    (    3    ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month.  If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

_____ (Seal)
CLARENCE E.  BOSCHMA          -Borrower

_____ (Seal)
SHIRLEY C.  BOSCHMA          -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

SP/Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0505)                    VMP Mortgage Solutions, Inc. (800)521-7291                    SPD #002
                                                                                               (05/05)



**FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT**
THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND

Loan Number: 2107576                                              Date: FEBRUARY 1, 2006
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s): CLARENCE E. BOSCHMA, SHIRLEY C. BOSCHMA

Address: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price<br>The total cost of your purchase on credit including your down payment of $<br> |
|---|---|---|---|---|
| 7.189 % | $403,945.90 | $246,805.35 | $650,751.25 | $ |

**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 833.13 | 04/01/06 | | | | | | |
| 11 | 833.13 | 05/01/06 | | | | | | |
| 12 | 895.61 | 04/01/07 | | | | | | |
| 12 | 962.78 | 04/01/08 | | | | | | |
| 5 | 1,034.99 | 04/01/09 | | | | | | |
| 318 | 1,922.49 | 09/01/09 | | | | | | |
| 1 | 1,926.24 | 03/01/36 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability  __X__ Property insurance  _____ Flood insurance  _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 14757 GLENN DRIVE, WHITTIER, CALIFORNIA 90604
_____ The goods or property being purchased __X__ Real property you already own.
FILING FEES: $
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 _____ % of the payment.
                                                                    * or $5.00 (whichever is greater)
PREPAYMENT: If you pay off early, you
__X__ may   _____ will not   have to pay a penalty.
_____ may   __X__ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may   __X__ may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.

Each of the undersigned acknowledges receipt of a complete copy of this disclosure. This disclosure does not constitute a contract or a commitment to lend.

| Applicant CLARENCE E. BOSCHMA | Date | Applicant SHIRLEY C. BOSCHMA | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT                    DocMagic eForms 800-649-1362
                                                                  www.docmagic.com

# Exhibit 2

**EXHIBIT 2**

# ADJUSTABLE RATE NOTE
( 12 MONTH MTA
Payment and Rate Caps)

MIN: 1001968-0002102158-4                Loan Number: 2102158

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

NOVEMBER 22, 2005                IRVINE              ,    CALIFORNIA
[Date]                          [City]                   [State]

1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 150,000.00 (this amount "principal"), plus interest, to the order of the Lender. The Lender is HOME LOAN CENTER, INC., dba LENDINGTREE LOANS, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
**(A) Interest Rate**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 1.250 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**
The interest rate I will pay may change on the first day of JANUARY , 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**
My interest rate will never be greater than 9.950 %.

**(D) Index**
Beginning with the first Interest Rate Change Date my interest rate will be based on an index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)". The Monthly Yields". The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is call the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE                                    Form 3003 4/2000
8480185 (0010)                    Page 1 of 4
                          VMP MORTGAGE FORMS - (800)521-7281              Initials:

3003.ism

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 250/1000                          percentage point(s) (         3.250 %) to the Current Index.
Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest
Rate Change Date.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on JANUARY 1                ,
2006     . I will make these payments every month until I have paid all the principal and interest and any other charges
described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before principal. If, on DECEMBER 1, 2035               , I still owe amounts under this Note, I will pay
these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618
                                                                              or at a different place if
required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 499.88            . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the          1st          day of
     JANUARY, 2007        , and on that day every 12th month thereafter. Each of these dates is called a "Payment
Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different
monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in
Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be
sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in
substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of
this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new
monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount
that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change
Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient
to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If
so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my
monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder
also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest
added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ONE HUNDRED TEN AND
000/1000     percent (          110.000 %) of the principal amount I originally borrowed. Because of my
paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could
cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my
paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly
payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in
substantially equal installments at the interest rate effective during the preceding month.

Form 3003 4/2000

8480185 (0010)                                    Page 2 of 4                          Initials: _____

3003.irm

**(G) Required Full Payment**
On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

## 4. NOTICE OF CHANGES
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY        ** See attached Prepayment Note Addendum.
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.
I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED
**(A) Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of my monthly payment by the end of  15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
  5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

Form 3003 10/2000
Initials: _____

3003.tem

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
SHARON ROBISON                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                       -Borrower                                                    -Borrower

[Sign Original Only]

Page 4 of 4                                                    Form 3003 4/2000

**ADDENDUM TO ADJUSTABLE RATE NOTE**
(Prepayment)

Loan #: 2102158

THIS ADDENDUM is made this    22nd    day of    NOVEMBER 2005     , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.    My right to make a Prepayment under Section 5 is modified by this Addendum.  A Prepayment of the entire unpaid principal balance is known as a "Full Prepayment."  A Prepayment of only part of the unpaid principal balance is known as a "Partial Prepayment."

2.    Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any Prepayment charge.  If within the first    THREE    (    3    ) year(s) I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in any twelve (12) month period, I will pay a Prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount.

If I make a Partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month.  If I make a Partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

3.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: _____

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| SHARON ROBISON           -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |

SPI Hard Prepayment Addendum (1-3 yrs) - ARM
AZ, CA, CO, CT, DE, FL, HI, ID, IL, IN, MT, ND,
NE, NH, NV, OK, SD, TN, UT, WA, WY,
AR (loan amounts greater than $150,000)
NY (1 year only and if ARM, must have at least a 5-yr fixed rate period),
TX (interest rate cannot exceed 12%)

8480002 (0505)              VMP Mortgage Solutions, Inc. (800)521-7291

SPD #002
(05/06)

Spd002.izm

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (TH. . NEITHER A CONTRACT NOR A COMMITME TO LEND)

Loan Number: 2102158                                                     Date: NOVEMBER 22, 2005
Creditor: HOME LOAN CENTER, INC., dba LENDINGTREE LOANS
Address: 163 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

Borrower(s):  SHARON ROBISON

Address:   1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down payment of $ |
|---|---|---|---|---|
| 6.811 % | $ 225,980.88 | $ 145,284.38 | $ 371,265.26 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 1 | 499.88 | 01/01/06 | | | | | | |
| 11 | 499.88 | 02/01/06 | | | | | | |
| 12 | 537.37 | 01/01/07 | | | | | | |
| 12 | 577.67 | 01/01/08 | | | | | | |
| 12 | 621.00 | 01/01/09 | | | | | | |
| 5 | 667.58 | 01/01/10 | | | | | | |
| 306 | 1,111.06 | 06/01/10 | | | | | | |
| 1 | 1,111.96 | 12/01/35 | | | | | | |

_____ DEMAND FEATURE:  This obligation has a demand feature.

 X  VARIABLE RATE FEATURE:  Your loan contains a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE:  The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability   X  Property Insurance   _____ Flood Insurance   _____ Private Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY:  You are giving a security interest in:  1000 NORTH CHINOWTH ROAD, VISALIA, CALIFORNIA 93291
_____ The goods or property being purchased   X  Real property you already own.
FILING FEES: $
LATE CHARGE:  If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 _____ % of the payment.
PREPAYMENT:  If you pay off early, you                          * or $5.00 (whichever is greater)
 X  may   _____ will not   have to pay a penalty.
_____ may   X  will not   be entitled to a refund of part of the finance charge.
ASSUMPTION:  Someone buying your property
_____ may   X  may, subject to conditions   _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
 X  "e" means an estimate   _____ all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure.  The disclosure does not constitute a contract or a commitment to lend.

| Applicant  SHARON ROBISON | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE:  Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

# PROOF OF SERVICE

STATE OF CALIFORNIA      ) ss:
COUNTY OF LOS ANGELES )

I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 8648 Wilshire Boulevard, Beverly Hills, California 90211-2910.

On July 24, 2008, I served the foregoing document(s) described as: **THIRD AMENDED CLASS ACTION COMPLAINT** on the interested parties by placing ( ) the original ( X ) a true and correct copy thereof in a sealed envelope addressed as follows:

## PLEASE SEE ATTACHED MAILING LIST

☐ VIA OVERNIGHT MAIL:

VIA : By delivering such documents to an overnight mail service or an authorized courier in an envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒ VIA U.S. MAIL:

I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service with postage thereon fully prepaid, at Beverly Hills, California.

☐ VIA PERSONAL DELIVERY:

I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP § 1011.

☐ VIA FACSIMILE:

The interested parties receiving the above-referenced document via facsimile have agreed to accept same via facsimile transmission, and the facsimile transmission report indicated that the transmission was complete and without error. A copy of that report, which was properly issued by the transmitting machine, is attached hereto.

☐ STATE:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ FEDERAL:

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the state of California that the above is true and correct and was executed on July 24, 2008, at Beverly Hills, California.

_____
Julissa E. Salgueiro

1

<u>Boschma, et al. v. Home Loan Center, et al.</u>
United States District Court, Central District of California;
Case Number SACV 07-613 AG (JTLx)

2

3

4  Jeffrey K. Berns, Esq.
jberns@jeffbernslaw.com
5  ARBOGAST & BERNS LLP
19510 Ventura Boulevard, Suite 200
6  Tarzana, California 91356
Telephone: 818/961.2000
7  Facsimile: 818/867.4820
**Attorneys for Plaintiffs**

8

Robert S. Beall, Esq.
9  Rbeall@sheppardmullin.com
Jonathan P. Hersey, Esq.
10  Jhersey@sheppardmullin.com
SHEPPARD MULLIN, RICHTER &
11  HAMPTON
650 Town Center Drive
12  Fourth Floor
Costa Mesa, California 92626
13  Telephone: 714/513.5100
Facsimile: 714/513.5130
14  **Attorneys for Defendants, HOME
LOAN CENTER, INC. dba
15  LENDINGTREE LOANS, a
California Corporation**

16

17

18

19

20

21

22

23

24

25

26

27

28